986 F.2d 446
 61 Fair Empl.Prac.Cas. (BNA) 550,
61 Empl. Prac. Dec. P 42,200, 61 USLW 2643
 Felicia CALLOWAY, Plaintiff-Appellant,
v.
PARTNERS NATIONAL HEALTH PLANS; Partners Health Plan of
Alabama; Partners Health Plan of Alabama Birmingham HMO;
Robert R. Vogel, individually and as Chief Executive Officer
of Partners Health Plan of Alabama; Jeffrey H. Winokur,
individually and as Marketing Manager of Partners Health
Plan of Alabama, Defendants-Appellees.
 No. 91-7934.
 United States Court of Appeals,
Eleventh Circuit.
 March 19, 1993.
 
 Ann K. Norton, Gordon, Silberman, Wiggins & Childs, Robert L. Wiggins, Jr., Birmingham, AL, for plaintiff-appellant.
 William F. Gardner, Cabaniss, Johnston, Gardner, Dumas & O'Neal, William K. Thomas, Birmingham, AL, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before BIRCH, Circuit Judge, JOHNSON, Senior Circuit Judge, and THOMAS*, Senior District Judge.
 JOHNSON, Senior Circuit Judge:
 
 
 1
 This appeal presents the question of whether a Title VII claim for wage discrimination is a single or continuing violation. The district court found that Felicia Calloway's claim of wage discrimination was a single violation which occurred the day she was hired, and entered final judgment in favor of her employer, Partners National Health Plans et al. ("Partners"). We reverse.
 
 I. STATEMENT OF FACTS
 A. Factual background
 
 2
 In June 1987, Jeffrey Winokur, Partners' Marketing Director, offered Calloway the position of Marketing Secretary/Secretary I, at the rate of $14,996 annually. Before accepting the offer, Calloway attempted to negotiate a higher salary, but Winokur told her that he was unable to offer more money. Calloway accepted the offer, replacing Kim Martin, a white female who had been hired nine months earlier at the rate of $16,000 per year.
 
 
 3
 Over the next two years, Calloway unsuccessfully applied for several positions of increased responsibility. In November 1989, Calloway resigned. To replace her, Winokur hired Kim Brasher, a white female. Although Brasher had neither a college degree nor any prior experience working with health maintenance organizations, Winokur offered Brasher a salary greater than Calloway was making when she left.
 
 
 4
 From June 1987, when Calloway was hired, until February 1988, Partners employed only two black individuals--Calloway and Ivory Steward. In February 1988, Winokur fired Steward. Steward filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 19, 1988, alleging that "similarly situated Caucasians and males have been treated more favorably than I, with regard to wages, discharge and in their terms and conditions of employment." In 1989, after receiving her notice of a right to sue, Steward filed suit against Partners in district court.
 
 B. Procedural background
 
 5
 Shortly after resigning from Partners, Calloway filed a timely motion to intervene in Steward's suit, alleging that she relied on Steward's EEOC charge. The district court denied Calloway's motion to intervene, citing the dissimilar nature of Calloway's claims and the advanced stage of Steward's suit. Instead, the district court treated Calloway's motion to intervene as the filing of a separate lawsuit.
 
 
 6
 After a two-day bench trial before the same judge who denied Calloway's motion to intervene, the district court found that Calloway's claim was "very similar" to Steward's charge, thereby permitting Steward's charge to support Calloway's claim. The court proceeded to find that Calloway had proven that her initial wage rate was discriminatory. Nevertheless, the court held that Calloway's wage discrimination claim was time barred, reasoning that the wage discrimination was the product of a single discrete act which occurred on the day Calloway began her employment with Partners, two months outside of the time-frame supported by the Steward charge.
 
 
 7
 On appeal, Calloway argues that the district court's finding that Partners' discriminatory wage payments were the product of a discrete act is clearly erroneous. In response, Partners argues that even if the discriminatory wage payments constitute a continuing violation, the district court's judgment denying Calloway relief should be affirmed for two reasons. First, Partners argues that the district court erred in permitting Calloway to rely on Steward's charge. Second, Partners argues that Calloway should be denied relief because of the doctrine of unclean hands.
 
 II. DISCUSSION
 A. Continuing violation
 
 8
 As a prerequisite to bringing suit under Title VII, a charge must be filed with the EEOC within 180 days of the date of the act giving rise to the charge. See 42 U.S.C.A. § 2000e-5(e) (1992). Because Calloway brought her claim under Steward's EEOC charge, Calloway's claim is timely only if the alleged wage discrimination occurred after August 18, 1987, 180 days prior to the date Steward filed her EEOC charge. The district court termed Steward's claim as one for discrimination in initial wage rate, and held that her claim was time barred because it was the product of a single discrete act that occurred on the day Calloway was hired, two months outside of the relevant 180-day period.
 
 
 9
 Whether a discriminatory act constitutes a continuing violation of Title VII or a past violation with a present effect is a finding of fact which we review under the clearly erroneous standard. United States v. Georgia Power Co., 474 F.2d 906, 924 (5th Cir.1973) (in Title VII case, date of occurrence for statute of limitations is factual finding). Fed.R.Civ.P. 52(a). See also Gonzalez v. Firestone Tire & Rubber Co., 610 F.2d 241, 249 (5th Cir.1980) (remand for factual determination of whether violation of Title VII was continuing).
 
 
 10
 In determining whether a discriminatory employment practice constitutes a continuing violation, this Circuit distinguishes between "the present consequence of a one time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." Beavers v. American Cast Iron Pipe Co., 975 F.2d 792, 796 (11th Cir.1992) (citations omitted). See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 658 (11th Cir.1992); Firestone Tire & Rubber, supra, 610 F.2d at 249. Although the district court found that Calloway had established her Title VII claim for wage discrimination, the district court found that the wage discrimination was not continuing, but was the present consequence of a discriminatory act which occurred the day Calloway was hired. This finding was clear error. Partners discriminated against Calloway not only on the day that it offered her less than her white predecessor, but also on every day of her employment. See Bazemore v. Friday, 478 U.S. 385, 395, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986) ("Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII ...").
 
 
 11
 Contrary to Partners' assertions, Calloway's wage claim is not a single violation with a continuing effect. Cf. United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (forced resignation was single discriminatory act with continuing effect). As the Supreme Court emphasized in Evans, "the critical question is whether any present violation exists." Id. at 558, 97 S.Ct. at 1889. When the claim is one for discriminatory wages, the violation exists every single day the employee works. See Bazemore, supra, 478 U.S. at 396 n. 6, 106 S.Ct. at 3006 n. 6.
 
 
 12
 Although we have not had occasion to apply the theory of continuing violations to wage claims under Title VII, "the Eleventh Circuit has long held that 'sex based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act.' " Mitchell v. Jefferson County Bd. of Educ., 936 F.2d 539, 548 (11th Cir.1991) (quoting Hodgson v. Behrens Drug Co., 475 F.2d 1041, 1050 (5th Cir.1973)). Today we conclude that race based, discriminatory wage payments constitute a continuing violation of Title VII. Accordingly, the district court's finding that Partners' discriminatory wage payments were the product of a single discrete act occurring outside the statute of limitations is clearly erroneous.
 
 B. Single-filing rule
 
 13
 Partners argues that even if its discriminatory wage payments to Calloway constituted a continuing violation of Title VII, the district court's decision denying Calloway relief should be affirmed because Calloway should not have been allowed to proceed on Steward's EEOC charge.[1]
 
 
 14
 The timely filing of an EEOC charge is a prerequisite to a Title VII suit. Allen v. United States Steel Corp., 665 F.2d 689, 695 (5th Cir. Unit B 1982) (citing cases). However, in certain instances we have permitted a plaintiff who has not filed an EEOC charge to rely on another plaintiff's charge, provided two essential requirements are met: (1) the charge being relied upon must be timely and not otherwise defective; and (2) the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame. Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1011-12 (11th Cir.1982). Partners does not dispute that Calloway satisfied both of these requirements.[2] Rather, Partners argues that Calloway may not rely on Steward's charge because she is not part of the same lawsuit as Steward.
 
 
 15
 Whether a plaintiff may invoke the single-filing rule to rely on an EEOC charge filed by another plaintiff in another lawsuit is a question of first impression in this Circuit. We first invoked the "single-filing rule" in the context of a class action to permit unnamed plaintiffs to rely on the EEOC charge filed by the named plaintiff. Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498-99 (5th Cir.1968). We then extended the single-filing rule to permit intervenors who had not filed EEOC charges to rely on the charge of one of the original plaintiffs. Wheeler v. American Home Products Corp., 582 F.2d 891, 897-98 (5th Cir.1977). Finally, we permitted plaintiffs in multiple-plaintiff, non-class action lawsuits to rely on the charge filed by one of their co-plaintiffs. Crawford v. United States Steel Corp., 660 F.2d 663, 665-66 (5th Cir. Unit B 1981).
 
 
 16
 Each of these applications of the single-filing rule has been grounded in the purpose of the EEOC charge requirement "that the settlement of grievances be first attempted through the office of the EEOC." Oatis, supra, 398 F.2d at 498. By requiring that the relied upon charge be otherwise valid, and that the individual claims of the filing and non-filing plaintiff arise out of similar discriminatory treatment in the same time frame, we have ensured that no plaintiff be permitted to bring suit until the EEOC has been given the opportunity to address the grievance. Indeed, we have rebuffed attempts to invoke the single-filing rule where the relied upon charge is invalid, or where the claimed discriminatory treatment is not similar or does not arise out of the same time frame. E.g., Hill v. MARTA, 841 F.2d 1533, 1545 (11th Cir.1988) (charge for discriminatory hiring policy would not support claims for discriminatory hiring arising before adoption of policy); Griffin v. Dugger, 823 F.2d 1476, 1492-93 (11th Cir.1987) (charge for discriminatory testing would not support claim for discriminatory discharge or promotion), cert. denied, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988); Ezell v. Mobile Housing Bd., 709 F.2d 1376, 1381 (1983) (charge for discriminatory discharge would not support claim for discriminatory testing); Allen v. U.S. Steel, supra, 665 F.2d at 689-90 (untimely original charge would not support similar claims).
 
 
 17
 Accordingly, we hold that a plaintiff, such as Calloway, who unsuccessfully moves to intervene in the lawsuit of a plaintiff who has filed an EEOC charge may invoke the single filing rule, provided (1) the relied upon charge is not invalid, and (2) the individual claims of the filing and non-filing plaintiff arise out of similar discriminatory treatment in the same time frame. Such a rule comports with the purpose of the EEOC charge requirement by ensuring that the settlement of grievances will be attempted first through the EEOC. Moreover, there is no reason to distinguish between a plaintiff who successfully intervenes and one who does not. As we stated in Wheeler, supra, 582 F.2d at 897, when we extended the single filing rule from class actions to successful intervenors, "it would frustrate the Congressional purpose expressed in Title VII if there were a rule which produced different results for discriminatory practices in situations governed by the same policy."
 
 C. Unclean hands
 
 18
 When Calloway initially applied for a position at Partners, she represented that she had received a college degree from Birmingham Southern University. At trial, Partners offered evidence that Calloway had lied regarding her college degree. Although the district court gave Calloway the opportunity to refute Partners claim, Calloway was unable to come forth with any evidence proving that she had actually graduated from Birmingham Southern or any other college. In its order denying Calloway relief, the district court found it unnecessary to reach the issue of whether the doctrine of unclean hands prevented her from recovering because it found Calloway's wage discrimination claim to be time barred. On appeal, Partners argues that because Calloway lied regarding her education, she should not be allowed to recover on her Title VII claim.
 
 
 19
 For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements. First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 147-48, 78 L.Ed. 293 (1933). Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct. Mitchell Bros. Film Group v. Cinema Adult Theater, 604 F.2d 852, 863 (5th Cir.1979), cert. denied, 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980).
 
 
 20
 Neither of these two requirements are satisfied in this case. First, Calloway's false claim of having a college degree is irrelevant to her wage discrimination claim because neither her predecessor nor her successor had college degrees.[3] Second, even if Calloway's misrepresentation were directly related to her claim for wage discrimination, Partners has failed to demonstrate that it was injured by the misrepresentation. If anything, the record indicates that Partners would have been injured if it had not hired her. Winokur, Calloway's immediate supervisor, testified that Calloway performed her job satisfactorily and that when Calloway resigned, Partners wanted to retain her.[4]
 
 III. CONCLUSION
 
 21
 For the foregoing reasons, we REVERSE the district court's judgment finding that Calloway's wage discrimination claim was a discrete act, and REMAND for further proceedings in conformity with this opinion.
 
 
 22
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 Calloway argues that we should not entertain Partners' alternative arguments to affirm the district court's ruling because they were rejected below and not made the subject of a cross-appeal. Calloway's argument is specious. As the prevailing party, Partners is "free to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected or even considered." Washington v. Yakima Indian Nation, 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979). Accord Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325, 327-28, 81 L.Ed. 593 (1937); United States v. American Ry. Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 563-64, 68 L.Ed. 1087 (1924); Greenwood Utilities Comm'n v. Hodel, 764 F.2d 1459, 1465 (11th Cir.1985). Because Partners raised each of its alternative grounds for relief below, it is free to raise them on appeal
 In addition to the two arguments that we address, Partners also makes the audacious argument that because Calloway did not file an EEOC charge or receive a notice to sue, the district court did not have jurisdiction to entertain Calloway's claim. To make this argument, Partners overlooks a decade of Eleventh Circuit precedent holding that the charge and notice to sue are merely prerequisites to filing a suit under Title VII. See Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1009 (11th Cir.1982) ("the conditions precedent to a Title VII action are not jurisdictional prerequisites").
 
 
 [2]
 Our review of the record, however, reveals that the district court made somewhat contradictory findings as to the similarity of Calloway's and Steward's claims. This case began after the district court denied Calloway's motion for intervention in the Steward case, citing the imminence of the Steward action as well as "the dissimilar nature of her claims." In its final order, the district court apparently changed its mind, finding that Steward's charge was "very similar to plaintiff's claims."
 Although we are unable to reconcile the two findings, we note reconciliation is not required. First, in making its determination that Steward's charge was similar enough to support Calloway's claim, the district court was not bound by the law of the case to follow its prior ruling, because the prior ruling concerned an entirely separate issue. See Luckey v. Miller, 929 F.2d 618, 621 (11th Cir.1991). Second, the district court's denial of Calloway's motion to intervene is not before us. The only question possibly before us is whether the district court's finding in this case that Calloway's claim was "very similar" to Steward's claim was clearly erroneous. We do not find clear error in the district court's determination.
 
 
 [3]
 Calloway's misrepresentation may have been relevant to her promotion discrimination claim. However, Calloway has not appealed the district court's denial of relief on her promotion claim. Accordingly, that issue is not before us
 
 
 [4]
 Because Partners has failed to satisfy the requirements necessary to assert a defense of unclean hands, we do not reach the larger issue of whether this defense is available in Title VII actions. See EEOC v. Recruit U.S.A., Inc., 939 F.2d 746, 753-55 (9th Cir.1991) (defense of unclean hands unavailable to prevent plaintiff recovery in Title VII case because its exercise would be contrary to the great public interest)