Mercer David GRAYSON, Plaintiff–Appellee, Cross–Appellant,

v.

K MART CORPORATION, Defendant–Appellant, Cross–Appellee.

Ronald L. BRALEY, Plaintiff–Appellee, Cross–Appellant,

v.

K MART CORPORATION, Defendant–Appellant, Cross–Appellee.

Tony M. ARRINGTON, Plaintiff–Appellee, Cross–Appellant,

v.

K MART CORPORATION, Defendant–Appellant, Cross–Appellee.

Ricky D. SALLEE, Plaintiff–Appellee, Cross–Appellant,

v.

K MART CORPORATION, Defendant–Appellant, Cross–Appellee.

James L. STEADMAN, Plaintiff–Appellee, Cross–Appellant,

v.

K MART CORPORATION, Defendant–Appellant, Cross–Appellee.

John D. THOMPSON, Plaintiff–Appellee, Cross–Appellant,

v.

K MART CORPORATION, Defendant–Appellant, Cross–Appellee.

Obediah SCONIERS, et al., Movants,

Carl Helton, Charles W. Kempton, James E. Taylor, Bob Williams, David Jack Wright, Plaintiffs–Appellees,

v.

K MART CORPORATION, Defendant–Appellant.

Nos. 94–9257, 94–9293.

United States Court of Appeals, Eleventh Circuit.

April 9, 1996.

James H. Coil, III, Edmund M. Kneisel, Walter E. Johnson, Kilpatrick & Cody, Atlanta, GA, for appellants.

Douglas S. McDowell, McGuiness & Williams, Washington, DC, for amicus.

Daniel M. Klein, Green, Buckley, Jones & McQueen, Atlanta, GA, James Lee Ford, Ford & Felton, Atlanta, GA, for appellees.

Before TJOFLAT, Chief Judge, and DYER and GARTH [1], Senior Circuit Judges.

GARTH, Senior Circuit Judge:

The plaintiffs in the *Grayson* and *Helton* actions (together "the plaintiffs") are store managers in K Mart's Southern Region who were demoted or terminated by K Mart during the period from 1990 to 1992. The plaintiffs allege that their demotions or terminations were motivated by age-discrimination in violation of the Age Discrimination in Employment Act of 1967. 29 U.S.C. § 621 *et seq.* (the "ADEA"). The *Grayson* action was commenced on January 17, 1992 before District Court Judge Julie Carnes in the Northern District of Georgia. The *Helton* action was commenced on October 29, 1992 before District Court Judge Marvin Shoob, also in the Northern District of Georgia.

Judge Shoob certified for interlocutory appeal, his July 21, 1994 Order allowing the creation of an ADEA opt-in class under 29 U.S.C. § 216(b). For the reasons stated *infra,* we will affirm Judge Shoob's July 21, 1994 Order insofar as it creates an opt-in joinder class, but we will reverse and remand for redetermination of the temporal scope of the class. We also will dismiss K Mart's appeal of Judge Carnes' order of October 28, 1994 which had dismissed the *Grayson* actions without prejudice. We do so because we lack appellate jurisdiction over an order

---

1. Honorable Leonard I. Garth, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

which we here hold to be non-final and hence, not appealable.

## I. Background

K Mart's Southern Region covers approximately 700 stores in eighteen states, Puerto Rico, and the Virgin Islands. The Southern Region is subdivided into five "sub-regions," each of which is headed by a Region Manager. Each "sub-region" is divided into districts of about ten to sixteen stores, and each district has its own District Manager.

In 1987, when Joseph Antonini became President, CEO, and Chairman of K Mart, he began a program of company restructuring called the "Renewal Program," aimed at creating a "new image" for K Mart. The plaintiffs allege that as part of K Mart's "new image," Antonini sought more youthful store managers. This goal, the plaintiffs allege, was shared by other high-level managers, particularly Don Keeble, K Mart's director of nationwide store operations; Tom Watkins, K Mart's Senior Vice President of Store Operations; John Valenti, K Mart's Regional Vice President of the Southern Region; and Robert McAllister, Valenti's predecessor as the Southern Regional Vice President.

In early 1990, Watkins instructed Robert McAllister, Valenti's predecessor as the Southern Regional Vice President, to prepare a listing of all of the managers in K Mart's Southern Region who had been rated "Needs Improvement" in 1989. Each manager's age and pay were listed, as well as the action the company had taken or was planning to take with respect to that manager. In March of 1990, McAllister sent Watkins the requested chart. Each "Below Expectations" manager under the age of thirty-nine was scheduled to be re-appraised in the near future without explanation. Most of the managers around the age of forty were demoted. Six of the eight managers over the age of forty-five were slated for demotion.

Valenti became Southern Regional Vice President soon after this time. From 1990 through 1992, K Mart demoted 151 Southern Region Store Managers, and approximately 76 additional store managers resigned. Each of the *Grayson* and *Helton* plaintiffs received "Commendable" or "Competent" an-

nual evaluations for the years preceding this period of time. Thereafter, they started receiving "Needs Improvement," "Below Expectations," or "Unsatisfactory" evaluations.

The plaintiffs allege that K Mart "built a case" or "built a file" against each store manager before demoting him. Specifically, the plaintiffs allege that when K Mart targeted an older store manager for demotion, it would relentlessly criticize him for matters that were consistently overlooked for younger managers; or K Mart would assign the targeted manager unachievable goals, only to criticize him when those goals were not reached. This "building a case" demotion process, the plaintiffs contend, was centrally planned, monitored, and coordinated.

K Mart denies that the demotions were motivated by age discrimination. K Mart alleges that each demotion decision was based on the individual performance of the store manager in question, as judged by the store's operating results, general physical appearance, and compliance with K Mart company policies. Further, K Mart argues that the plaintiffs have failed to produce any evidence to show that any evaluation about the operations of their stores was false or prepared for age-biased reasons. K Mart also argues that there is no evidence that younger managers were treated any differently from older managers. Indeed, according to K Mart, the average age of store managers and the average earnings of older store managers increased slightly in the three sub-regions where the plaintiffs were employed. K Mart also denies that the demotions were centrally planned, noting that with few exceptions, the plaintiffs were each demoted by different Region Managers.

On January 17, 1992, Mercer Grayson and ten other plaintiffs (the *"Grayson"* plaintiffs) from Alabama, Florida, Georgia, and North Carolina filed a complaint in the Northern District of Georgia, alleging that they had each been demoted or terminated within a few months after the end of K Mart's 1990 fiscal year based on age discrimination in violation of the ADEA. Each plaintiff also claimed intentional infliction of emotional distress under their respective state

laws. In their complaint, the *Grayson* plaintiffs stated that they filed the action on behalf of "other employees or former employees who may be similarly situated." This case was assigned to District Court Judge Julie Carnes.

■ On October 29, 1992, Carl Helton and four other plaintiffs (the " *Helton* " plaintiffs) filed a similar complaint, also in the Northern District of Georgia, alleging that they had been demoted in violation of the ADEA during or after the end of K Mart's 1991 fiscal year. The *Helton* plaintiffs did not allege or suggest that their case should be treated as a class action. The *Helton* plaintiffs did not designate their case as being related to the *Grayson* case on the civil intake questionnaire, so the *Helton* case was assigned to a different judge: District Court Judge Marvin Shoob.[2] The plaintiffs in both cases engaged in parallel discovery.

On February 16, 1993, K Mart moved for severance in the *Helton* case under Federal Rule of Civil Procedure 42(b), arguing that the claims of the five *Helton* plaintiffs were not properly joined under Federal Rule of Civil Procedure 20.

On March 17, 1993, after the end of the scheduled discovery period in *Grayson*, K Mart filed in the *Grayson* case, a (1) a motion for summary judgment with respect to the claims of each of the eleven plaintiffs; (2) a motion for severance under Rule 42(b), arguing that the claims of the eleven plaintiffs were not properly joined under Rule 20; and (3) a motion to transfer the claims of five plaintiffs who lived and worked in Florida and North Carolina to district courts in those states.

On September 30, 1993, Judge Shoob rejected K Mart's motion for severance in the *Helton* case.

Discovery was completed in both cases shortly after January 25, 1994.

On February 22, 1994, Judge Carnes granted K Mart's severance motion in the *Grayson* case, ruling that the claims of the eleven plaintiffs were not properly joined under Federal Rule of Civil Procedure 20 and that the claims should be severed into eleven separate cases under Federal Rule of Civil Procedure 42(b).

On March 1, 1994, after Judge Carnes had granted K Mart's severance motion, the *Grayson* plaintiffs withdrew their objections to transfer. At the same time, Judge Carnes issued a Transfer Order dated February 25, 1994.

On February 28, 1994, the *Helton* plaintiffs filed: (1) a motion seeking leave to amend their complaint to allege for the first time an ADEA "class action" under 29 U.S.C. § 216(b); (2) a motion for leave to amend the complaint to add that the action is brought on behalf of other similarly situated individuals; and (3) a motion for leave to send notice of the case to other "unnamed" potential class members to advise them that they could "opt-in" as plaintiffs in the case pursuant to 29 U.S.C. § 216(b).

K Mart opposed the *Helton* plaintiffs' motions and renewed its motion to sever the *Helton* claims among the five plaintiffs.

By Order filed July 21, 1994, Judge Shoob granted the *Helton* plaintiffs' February 28, 1994 motions to create an opt-in class under 29 U.S.C. § 216(b) and to amend their complaint. Judge Shoob denied K Mart's renewed motion to sever.

After transferring to other district courts the complaints of five of the *Grayson* plaintiffs, Judge Carnes, on August 23, 1994, *sua sponte* issued a conditional order dismissing without prejudice each of the six severed actions remaining in the *Grayson* case. In so doing, Judge Carnes noted that all of the *Grayson* plaintiffs were members of the *Helton* class and assumed that those plaintiffs would wish to opt in to the *Helton* case. As a condition of these dismissals, Judge Carnes provided that the six *Grayson* plaintiffs could reopen their cases if they were later excluded from the *Helton* case.

---

**2.** We look with disfavor upon the commencement of two separate actions which assert essentially the same cause of action based on essentially the same facts and legal theories, before two different judges. This is particularly egregious where, as here, the same counsel represented both the *Grayson* and *Helton* plaintiffs in both actions.

On September 9, 1994, K Mart filed a motion for reconsideration of Judge Carnes' August 23, 1994 ruling in *Grayson*, arguing that the dismissal (1) caused significant prejudice to K Mart; (2) was inconsistent with the law of the case, and (3) was improper under Federal Rule of Civil Procedure 41(a). K Mart moved for Judge Carnes to certify an interlocutory appeal of the August 23, 1994 dismissal order under 28 U.S.C. § 1292(b).

On October 17, 1994, the *Helton* plaintiffs amended their complaint to specify that their action was being brought on behalf of both the named plaintiffs and others "similarly situated" under 29 U.S.C. § 216(b).

By Order entered October 28, 1994, Judge Carnes denied K Mart's motion for reconsideration and refused to certify an interlocutory appeal of the August 23, 1994 dismissal order. In addition, in an effort to frame her initial dismissal order as a final appealable order, Judge Carnes, by another Order entered October 28, 1994, sought to remove all contingencies in the dismissal order.

Thereafter, the six remaining *Grayson* plaintiffs purported to opt-in as plaintiffs in *Helton*. Further, the five former *Grayson* plaintiffs, whose claims had been severed and transferred to other jurisdictions, filed opt-in notices in *Helton*. Two of those former *Grayson* plaintiffs were allowed to "re-transfer" their cases back to the Northern District of Georgia. The other three former *Grayson* plaintiffs' cases have been stayed pending disposition of the opt-in claims in *Helton*. K Mart had opposed all five transfer motions with a "law of the case" argument. Every district court presiding over one of those former *Grayson* cases rejected that argument.[3]

On October 12, 1994, Judge Shoob certified the July 21, 1994 "class action" ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In certifying the July 21, 1994 Order for interlocutory appeal, Judge Shoob listed five specific questions:

(1) Whether the "similarly situated" requirement of 29 U.S.C. § 216(b) is essentially the same as the requirement for joinder of additional plaintiffs under Fed.R.Civ.P. 20 and 42.[4]

(2) Whether the "similarly situated" requirement of § 216(b) requires the court to find a unified policy, plan or scheme of discrimination by the defendant before an "opt-in" class action may be maintained.

(3) Whether this Court allows potential class members who had not filed a timely administrative claim to rely on timely filed charges filed by representative plaintiffs alleging "class-wide discrimination."

(4) Whether the EEOC charges filed by the representative plaintiffs in this action gave adequate notice of "class-wide" discrimination for purposes of the single-filing ("piggybacking") rule.

(5) Whether an evidentiary hearing must have been first conducted, before the court certified the class pursuant to 29 U.S.C. § 216(b).

On November 18, 1994, this Court granted K Mart's petition for leave to appeal Judge Shoob's July 21, 1994 interlocutory order. By Order filed June 7, 1995, Judge Shoob granted the EEOC's motion to intervene in the *Helton* case.

## II. Judge Carnes' Dismissal Order in *Grayson*

■ We turn first to the appeal taken by K Mart from the order entered by Judge Carnes on October 28, 1994, which dismissed

---

**3.** In one of these cases, plaintiff Kenneth Bell's case was transferred from the Middle District of Florida, to Judge Shoob, and K Mart asked Judge Shoob to retransfer the case back, based on the "law of the case." Judge Shoob denied K Mart's motion, stating that "the Court does not agree that the retransfer decision [by Judge Schlesinger] is inconsistent with 'the law of the case.'" K Mart petitioned for writ of mandamus on this issue. On November 18, 1994, the Eleventh Circuit denied the petition for mandamus.

**4.** In the Order certifying issues for interlocutory appeal, it appears to us that "2" and "4" were transposed so that the Order reads Rule "24" instead of "42." This is undoubtedly a typographical error, since Rule 24 (intervention) has no application or relevance to this case, while Rule 42 (separate trials) is one of the grounds upon which Judge Carnes based her severance motion.

the six remaining *Grayson* plaintiffs without prejudice. K Mart appeals, urging us to reverse Judge Carnes' dismissal order. We reject K Mart's argument because we are convinced that Judge Carnes' order, though fashioned to be an appealable order, was in effect non-final. As such, we lack appellate jurisdiction to entertain K Mart's appeal from her order, 28 U.S.C. § 1291, and we dismiss K Mart's appeal. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379–80, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).[5]

Judge Carnes *sua sponte* dismissed without prejudice the six remaining actions in the *Grayson* case on August 23, 1994, with the express intention of allowing the *Grayson* plaintiffs to opt into the *Helton* case. At the same time, and as a condition of those dismissals, Judge Carnes provided that the six *Grayson* plaintiffs could reopen their cases before her if they were later excluded from the *Helton* case as "opt-ins." On October 28, 1994, Judge Carnes reframed her order dismissing the *Grayson* actions without prejudice, but this time she did not qualify the dismissal order with any conditions. It is this latter dismissal order from which K Mart appeals.[6]

We hold that the October 28, 1994 order dismissing the *Grayson* actions without prejudice was in effect a transfer order which was non-final in nature and thus not appealable.[7]

It is well settled that a transfer order is not appealable as a final order under 28 U.S.C. § 1291. *E.g. Alimenta (USA) Inc. v. Lyng,* 872 F.2d 382, 385 (11th Cir.1989) (holding that the district court's order transferring the case to the claims court was not a final order and thus not appealable); *Dobard v. Johnson,* 749 F.2d 1503, 1506 (11th Cir. 1985) (holding that there was no appellate jurisdiction over district court's transfer order under 28 U.S.C. § 2241 and noting that "courts have fairly consistently held that transfer orders brought under other statutes are not generally final orders for the purpose of appeal").[8]

In this case the dismissal order was not "final," because the parties stipulated on the record that the *Grayson* plaintiffs may refile their action if they are barred from opting into the *Helton* case. *See* Plaintiffs' Initial Brief at 53–55 (citing to Status Conference before the Honorable Julie Carnes, October 25, 1994, at 44–47, 49–50, 56–58, 84). That colloquy shows clearly the intent of the district court and the parties to fashion an appealable, final order, even though the underlying conditions of the original August 23, 1994 Order were implicit in the October 28, 1994 Order as fashioned. *Id.*[9] We agree

---

5. Neither party has raised the issue of appealability, but we have the obligation ourselves to do so. *See Finn v. Prudential–Bache Securities, Inc.,* 821 F.2d 581, 584–85 (11th Cir.1987), *cert. denied,* 488 U.S. 917, 109 S.Ct. 274, 102 L.Ed.2d 262 (1988).

6. The October 28, 1994 dismissal order provides: "This action having come before the court, Honorable Julie E. Carnes, United States District Judge for consideration of plaintiffs oral motion to dismiss, and the court having granted motion, it is Ordered and Adjudged that the action is hereby dismissed without prejudice."

7. A dismissal "without prejudice" refers to the fact that the dismissal is not on the merits, not whether the dismissal is final and appealable. *See* 9 Moore Federal Practice ¶ 110.13[1] n. 30. Thus, although dismissals without prejudice may be appealable, *Liberty Nat'l Ins. Holding Co. v. The Charter Co.,* 734 F.2d 545, 553 n. 18 (11th Cir.1984), they are only appealable if they are "final orders." Dismissals that are without prejudice to refiling are not "final" for purposes of appeal. *See Jung v. K & D Mining Co.,* 356 U.S. 335, 78 S.Ct. 764, 2 L.Ed.2d 806 (1958) (dismissal of a complaint with leave to file an amended complaint is not a "final" and "appealable" order); *Mesa v. United States,* 61 F.3d 20, 22 (11th Cir.1995) (where district court had dismissed some but not all claims and plaintiffs, seeking an immediate appeal of the one dismissed claim, voluntarily dismissed remaining claims without prejudice, the voluntary dismissal could not be considered final, and thus was not appealable, because it was without prejudice to plaintiffs' refiling of those claims).

8. Transfer orders are reviewable, however, via alternative routes such as by writ of mandamus, *see Roofing & Sheet Metal Serv. v. La Quinta Motor Inns,* 689 F.2d 982, 987 (11th Cir.1982). However, K Mart does not argue that Judge Carnes' October 28, 1994 order is reviewable on any grounds other than as a final order.

9. While we are not certain that the record on appeal before us contains the colloquy which Judge Carnes had with counsel for Grayson and

with the plaintiffs' contention that the dismissal order was in effect a transfer order. Plaintiffs' Initial Brief at 55.

We find the Tenth Circuit's decision in *Facteau v. Sullivan,* 843 F.2d 1318 (10th Cir.1988) particularly instructive. Arthur Facteau, an inmate, had brought a civil rights action seeking modification of a New Mexico state penitentiary policy regarding body cavity searches. *Id.* at 1318. The district court dismissed Facteau's suit as barred by an ongoing class action on behalf of all inmates over conditions at the same prison, and it referred Facteau's claims to the class action. *Id.* The Tenth Circuit construed the district court's order as a dismissal without prejudice to refiling in the event that Facteau's claims were rejected as outside the scope of the class action. *Id.* The Tenth Circuit then found that the district court's order, which effected a transfer, was neither final nor appealable. *Id.* at 1319. That court reasoned:

> The critical determination is whether plaintiff has been effectively excluded from federal court under the present circumstances. We believe he has not. If plaintiff's allegations fall within the scope of the *Duran* [class action] litigation, he will have his claim decided by the *Duran* district court; if plaintiff's allegations fall outside the parameters of *Duran,* he may be transferred back to the original transferor court for reinstatement of his suit or he

may simply refile on his own. In either case, plaintiff will have his day in federal district court, with the opportunity to appeal, if necessary.

*Id.* at 1319–20. Similarly, in the present case, Judge Carnes' dismissal of the *Grayson* actions without prejudice is in effect a transfer of those cases to the *Helton* class action litigation, that would allow the *Grayson* plaintiffs to refile their claims before Judge Carnes in the event that they are not permitted to opt into the *Helton* class. Therefore, Judge Carnes' October 28, 1994 order is not final, and we DISMISS K Mart's appeal of that order for lack of appellate jurisdiction.[10]

### III. Judge Shoob's § 216(b) Order

The issues identified by Judge Shoob, in certifying his July 21, 1994 Order[11] for interlocutory appeal, are understandably closely related. Indeed, some of the issues necessarily overlap and, as a consequence, our rulings with respect to them overlap as well. Essentially we hold that the "similarly situated" requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance). We also hold that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal "similarly situated" requirement of § 216(b), even though in the instant case, we are persuaded that the allegations, affidavits, and depositions meet a standard of greater stringency

---

K Mart, inasmuch as the agreed-upon record, *see* note 14, *infra,* makes no reference to this transcript, we nonetheless have read that colloquy because it appears at length in the plaintiffs' initial brief on appeal. K Mart has not taken exception to the accuracy of the plaintiffs' quotation of the transcript of the hearing; indeed it could not take exception inasmuch as K Mart participated in the hearing and indeed urged Judge Carnes to modify her original dismissal order of August 23, 1994 so as to qualify her order for appeal to this Court.

K Mart argues only that plaintiffs' quotation from the transcript of that status hearing is incomplete because it failed to include, most relevantly, a colloquy showing that Judge Carnes denied the plaintiffs' request for transfer. We are satisfied, for the reasons stated *supra,* that even though Judge Carnes did not formally order transfer of the *Grayson* actions to the *Helton* class action, her order of dismissal without prejudice had the exact same effect.

**10.** In addition, we question whether K Mart is an aggrieved party with standing to challenge Judge Carnes' October 28, 1994 order dismissing the *Grayson* actions without prejudice. If K Mart had challenged that order on the ground that the dismissal should have been *with* prejudice, we may well have concluded that K Mart had standing to appeal. *See Kirkland v. Nat'l Mortgage Network, Inc.,* 884 F.2d 1367, 1369 (11th Cir. 1989); *see also Disher v. Information Resources, Inc.,* 873 F.2d 136, 139 (7th Cir.1989). However, in this case, K Mart is not asking for a dismissal with prejudice but instead seeks to return to Judge Carnes' court and to resume litigating the severed *Grayson* cases individually. In effect, K Mart is seeking to restore to Judge Carnes' court for trial, a phalanx of individual cases, each of which would be litigated in place of trying a class action.

**11.** We have annexed as an exhibit to this opinion, Judge Shoob's July 21, 1994 order.

than the "similarly situated" standard found in § 216(b). Indeed in this case, the record is more than sufficient to meet either standard.

We also hold that potential class members who had not filed a timely administrative claim if they otherwise had met the opt-in requirements which we specify in this opinion, may rely on timely filed charges by the original class plaintiffs who have filed timely charges. Finally, we conclude that no evidentiary hearing had to be conducted by the district court prior to certifying the § 216(b) class and that piggybacking may be employed where the requirements we have established for notice of classwide discrimination have been met.

### A.

In undertaking our review of Judge Shoob's July 21, 1994 Order in the *Helton* case permitting opt-in joinder of "similarly situated" plaintiffs pursuant to 29 U.S.C. § 216(b), we review not only the specific issues identified by the district court, but also the order as a whole. *See Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.*, 40 F.3d 1202, 1208 (11th Cir.1994) (recognizing that certification under § 1292(b) brings the district court's entire order before the appellate court on interlocutory appeal), *cert. den.*, —— U.S. ——, 116 S.Ct. 565, 133 L.Ed.2d 490 (1995).

Section 7(b) of the ADEA (codified at 29 U.S.C. § 626(b)) incorporates the opt-in class action provision of the Fair Labor Standards Act (codified at 29 U.S.C. § 216(b)). Section 216(b) provides that:

> An action to recover the liability prescribed ... may be maintained against any employer in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and *other employees similarly situated.* No employee shall be a party

plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . .

29 U.S.C. § 216(b) (1995) (emphasis added).

■ For an opt-in class to be created under section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." "[P]laintiffs need show only 'that their positions are similar, not identical,' to the positions held by the putative class members." *Sperling v. Hoffman–LaRoche*, 118 F.R.D. 392, 407 (D.N.J.1988), *aff'd in part and appeal dismissed in part*, 862 F.2d 439 (3d Cir.1988), *aff'd, Hoffmann–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)); *see* Howard Eglit, 1 *Age Discrimination* § 6.50 at 6–305 (2d ed. 1994). Furthermore, "Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively." *Hoffmann–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989).

■ We hold that section 216(b)'s "similarly situated" requirement is less stringent than that for joinder under Rule 20(a) or for separate trials under Rule 42(b). *See Flavel v. Svedala Indus. Inc.*, 875 F.Supp. 550, 553 (E.D.Wis.1994) ("The 'similarly situated' requirement, in turn, 'is considerably less stringent than the requirement of [Rule 23(b)(3) ] that common questions 'predominate,' or presumably, the Rule 20(a) requirement that claims 'arise out of the same action or occurrence.' ").[12]

■ K Mart argues that Judge Shoob violated principles of comity in creating a § 216(b) opt-in joinder class in *Helton*, given that Judge Carnes had previously severed the *Grayson* action pursuant to Rules 20 and 42 of the Rules of Civil Procedure.[13] In interpreting the Rules, we exercise *de novo*

---

12. Although not at issue in this case, it is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure. *See e.g. LaChapelle v. Owens Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir.1975) (Rule 23 and § 216(b) actions are "mutually exclusive and irreconcilable").

13. The "comity" asserted by K Mart strikes us as most dubious in light of the fact that Judge Shoob had denied severance in *Helton* prior in time to Judge Carnes' grant of severance in *Grayson. See* note 18, infra.

review. *See Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir.1995) (interpretation of federal rules of civil procedure is a question of law subject to *de novo* review).

We recognize that Judge Shoob, in certifying a class under § 216(b), was ruling on a different issue with different standards than those on which Judge Carnes ruled. In granting severance in *Grayson*, Judge Carnes relied on Rules 20(a) and 42(b) of the Federal Rules of Civil Procedure. Rule 20(a) provides for permissive joinder where there exist (1) a "right to relief ... arising out of the same transaction [and] occurrence," and (2) "common questions of fact or law" as required under Rule 20(a). Rule 42(b) provides for separate trials where the efficiency of a consolidated trial was outweighed by its potential prejudice. Fed.R.Civ.Proc. 42(b). In contrast, Judge Shoob created the *Helton* opt-in class pursuant to 29 U.S.C. § 216(b).

As a consequence, and despite K Mart's argument that Judge Shoob violated principles of "comity," we conclude that Judge Shoob did not trench upon any principles of "comity" when he made his § 216(b) ruling, because, among other things, the standard for allowing an opt-in joinder class under § 216(b) differs from, and is more lenient than, the standards for joinder and severance under Rules 20(a) and 42(b), respectively, of the Federal Rules of Civil Procedure.

### B.

■■■■ K Mart alleges that Judge Shoob erred in allowing the *Helton* plaintiffs to create an opt-in ADEA class under 29 U.S.C. § 216(b). We review Judge Shoob's ruling for abuse of discretion. *Van Poyck v. Singletary*, 11 F.3d 146, 148 (11th Cir.1994) (district court's ruling on class certification). We hold that Judge Shoob acted within his discretion in allowing a § 216(b) opt-in class in *Helton*, because the plaintiffs have made substantial allegations and provided evidentiary support for their contention that they were victims of an age-motivated purge in K Mart's Southern Region from 1990 to 1992.

■■■ The plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim of class-wide discrimination. *See Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir.1983). The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which "successfully engage defendants' affidavits to the contrary." *Sperling v. Hoffman–LaRoche*, 118 F.R.D. at 406–07.[14]

The plaintiffs' statistical expert, Leonard Cupingood, stated in his affidavit that because of the hiring and termination decisions of K Mart, 57.1% of the store manager workforce were over forty years old in December 1992, in contrast to the 74.2% that would have been in place in the absence of K Mart's hiring and termination decisions. (Cupingood Aff. at 6) (HR–104, Ex. 5). Thus, Cupingood concluded that "the disparity between the actual and expected number of older store managers who were demoted is statistically significant" for the period between January 1, 1990 and December 31, 1992. (Cupingood Aff. at 3).[15]

The evidence before Judge Shoob also showed that K Mart decisionmakers, from the Southern Region's Vice President up to K Mart's CEO, expressed their intent to purge K Mart of older managers. Joseph Antonini, who became President, CEO, and Chairman of K Mart in 1987, acknowledged at deposition that he had undertaken a "program to renew" K Mart's image. (Antonini Dep. at 31) (HR–104, Ex. 4). On October 10, 1989, Antonini gave a press briefing on "K Mart's present and future direction," in which he reported that:

> K Mart has one of the youngest and most aggressive management teams in retailing today. The average age of the 32–person corporate officer group is less than 50 years old with an average retail experience exceeding 22 years. Our store managers average 15 years service in our company.

---

**14.** At oral argument, the Court, concerned as to what constituted the record before us on appeal, asked that counsel agree on a joint statement of the record on appeal.

**15.** Cupingold's analysis was based on the statistical information submitted to date by K Mart, which included figures for one-half of the Southern Region. (Pl's Initial Brief at 15).

K Mart is confident that the team in place will move the company forward.

(Transcript of Remarks of J.E. Antonini at Press Briefing of Oct. 10, 1989, at 3) (HR–104, Ex. 4). Antonini had made similar comments in a speech on September 12, 1990, that was broadcast over K Mart's satellite network. (Antonini Dep. at 30). He testified that he was "proud" of the management team because they "had a lot of experience and a lot of longevity left." (Antonini Dep. at 39).

Don Keeble, K Mart's director of nationwide store operations made similar remarks. According to third parties who had dealt with Keeble in negotiating contracts for the cleaning of K Mart's stores, Keeble said that K Mart was "'working to change its image,'" and wanted its stores to "'have a fresher, cleaner, and younger look.'" (Powers Aff. at 2) (HR–104, Ex. 3). Keebles also said that the "'problem'" that K Mart had with its older store managers was that they "'were accustomed to the old way of doing things,'" but that he "'didn't want to re-educate these people, because they still wouldn't fit into the spirit of the new image that he and Mr. Antonini wanted;'" id., that "'K Mart was promoting a younger image in management,'" (Marzano Aff. at 2), and that K Mart had a lot of "'old wood'" that was really "'dead wood.'" Id. at 3.

Similarly, prior to becoming K Mart's Southern Regional Vice President, John Valenti said: "That's the trouble with K Mart. It's these older store managers. But we are planning to do something about it." (Marzano Supp.Aff. at 3) (HR–104, Ex. 2). Furthermore, the plaintiffs allege that after John Valenti became K Mart's Regional Vice President of the Southern Region, the job performance evaluations of the older store managers nearly all dropped from "Competent" or "Commendable" to "Needs Improvement," "Unsatisfactory," or "Below Expectations," while there was no similar downgrading of younger store managers' performances. (Pl's Initial Brief at 14–17). Indeed, the chart which Robert McAllister, Valenti's predecessor as Southern Region Vice President, created at the instruction of Tom Watkins, K Mart's Senior Vice President of Store Opera-

tions, reveals that every manager under the age of thirty-nine who had been rated "Below Expectations" was scheduled to be reappraised in the near future, while six of the eight of the managers over the age forty-five who had been rated "Below Expectations" was demoted or resigned. (Summary Chart, Mar. 23, 1990) (HR–104, Ex. 26).

The plaintiffs further allege that K Mart targeted older store managers for criticism and built a paper trail that would be grounds for their demotion. On November 1, 1985, McAllister and another Region Manager, Clifton, sent a confidential memorandum to all district managers notifying them that a new store management structure would "most probably" be in place in the near future, and instructing them to begin "building a case" to terminate low performing Resident Assistant [store] managers. (Confidential Mem. from McAllister and Clifton to District Managers, Nov. 1, 1985) (HR–104, Ex. 26). In 1988, Valenti assured David Marzano, who had contracted to clean K Mart's stores, that if Marzano encountered any problems with the older store managers, he, Valenti, would "build a file" on that manager. (Marzano Supp.Aff. at 3) (HR–104, Ex. 2). Charles Wester, a Southern Region Loss Prevention District Manager, testified that he was criticized by Valenti for not having done more to build cases against older store managers. (Wester Dep. at 264) (HR–104, Ex. 49).

W.A. Sands, a demoted K Mart store manager, states in his affidavit that K Mart, in "building a case" against a targeted older manager, would assign the manager unachievable goals, give the manager negative reviews when the goals were not met, and then use the negative reviews to remove the manager from his position. (Sands Aff. at 3) (HR–104, Ex. 42).

Wester, in his affidavit, states that K Mart would also build a case against a targeted older manager by "relentlessly criticiz[ing] him, complaining about matters that were routinely overlooked for younger managers." (Wester Aff. at 2) (HR–104, Ex. 15). In particular, the older store manager would be

heavily criticized for "invisible waste"[16] and other loss prevention matters. *Id.* During a visit to a K Mart store in Florida, Valenti told Wester and several other managers to be tougher on older store managers to reduce the "invisible waste." (Wester Dep. at 264–65). Virtually all of the district managers urged Wester to find certain deficiencies during his inspection of certain stores. (Wester Aff. at 3).

The district managers also conducted store inspections when the targeted older store manager was not scheduled to be at the store. *Id.* One district manager, Boes, told Wester that he was going to continue the pressure on several of his older store managers by making night visits and visits on their days off so that they would be afraid to leave their stores. *Id.* Wester testified that despite its relentless criticism of older managers for "invisible waste," K Mart ignored his recommendation to obtain security camera systems or to supply additional personnel to assist the stores run by older store managers in neighborhoods that were particularly susceptible to shoplifting. *Id.* at 5.

Although Valenti testified on deposition that any store manager whose store had invisible waste above one and one-half percent in 1990 was appraised "Needs Improvement," (Valenti Dep. at 104) (HR–104, Ex. 28), the plaintiffs' accounting expert James Hart testified that in the plaintiffs' districts, nine store managers under the age of forty who had invisible waste above one and one-half percent for 1990 received evaluations higher than "Needs Improvement" in 1991. (Hart Aff. at 2) (HR–104, Ex. 40). Not one of these younger store managers was demoted in 1991. (Hart Aff. at 3).[17]

We are persuaded that the plaintiffs, through their substantial allegations and evidence, have met the "similarly situated" requirement of § 216(b). Accordingly, we hold

that Judge Shoob did not abuse his discretion in allowing the creation of an opt-in class.

### C. Evidentiary Hearing

K Mart also faults Judge Shoob for not conducting an evidentiary hearing prior to making his § 216(b) ruling. We review Judge Shoob's ruling for abuse of discretion. *See United States v. Dynalectric Co.,* 859 F.2d 1559, 1580, *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989).

■ A court *may* hold an evidentiary hearing prior to certifying a class, *see e.g., Nelson v. United States Steel Corp.,* 709 F.2d 675, 676 (11th Cir.1983) (Rule 23 certification); *Jones v. Diamond,* 519 F.2d 1090, 1098 (5th Cir.1975) (same). The failure to hold an evidentiary hearing, however, does not require reversal of the class certification unless the parties can show that the hearing, if held, would have affected their rights substantially. *See Burns v. Long,* 44 F.3d 1031 (Table), 1994 WL 709329, *3 (D.C.Cir.1994); *Dellums v. Powell,* 566 F.2d 167, 189 n. 56 (D.C.Cir. 1977) ("[I]n the absence of a showing that [class] certification affected the 'substantial rights of the parties,' Rule 61, Fed.R.Civ.P., it is doubtful that reversal of certification on appeal would ever be appropriate"), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

■ Because the plaintiffs' substantial allegations and evidence, portions of which we have detailed above, adequately support Judge Shoob's § 216(b) ruling, and because K Mart has not shown that an evidentiary hearing would have affected its substantial rights, we hold that Judge Shoob did not abuse his discretion in allowing the creation of an opt-in joinder class under § 216(b) without first conducting an evidentiary hearing.[18]

16. "Invisible waste" refers to the difference between the store's record of inventory and the actual inventory in stock, to theft and bookkeeping errors. (Lynch Dep. at 90–91) (HR–104, Ex. 25).

17. Although K Mart has made its own substantial allegations (supported by affidavits and depositions) which contradict many of the facts that the plaintiffs seek to prove, we are satisfied that the

plaintiffs' substantial allegations "successfully engage [K Mart]'s affidavits to the contrary" and thus suffice to support Judge Shoob's § 216(b) ruling. *See Sperling v. Hoffman–LaRoche,* 118 F.R.D. at 406–07.

18. Finally, K Mart argues that Judge Shoob's § 216(b) ruling in *Helton* violated "law of the case" given that Judge Carnes had previously severed the *Grayson* case. This argument is mer-

## IV. The Temporal Scope of the Opt–In Class

### A. *In General*

A person who believes that he has been the victim of age discrimination must file a charge with the EEOC within 180 days of the adverse employment decision (here demotion) [19] if he is in a "non-deferral state," 29 U.S.C. § 626(d)(1); [20] and within 300 days of the employer's wrongful conduct if he is in a "deferral state," 29 U.S.C. § 626(d)(2).[21]

If the demotion occurred prior to November 21, 1991, the effective date of the Civil Rights Act of 1991, the plaintiff then has two years from the date of his demotion to begin a civil action for a non-willful violation of the ADEA; or three years to begin a civil action for a willful violation of the ADEA. 29 U.S.C. § 626(e).[22] If the demotion occurred on or after November 21, 1991, then the two-year and three-year statutes of limitations no longer apply, and the plaintiff instead must begin a civil action within ninety days after the date of his receipt of the EEOC's notice that his charge was filed. 29 U.S.C. § 626(e).

In any event, whether the conduct occurred before or after November 21, 1991, the plaintiff must wait sixty days after his EEOC charge is filed before commencing a civil action. 29 U.S.C. § 626(d).[23] After the sixty-day waiting period has elapsed, the plaintiff may then file suit in court. Unlike Title VII, the ADEA does not require that the plaintiff first receive a right to sue notice from the EEOC prior to commencing suit.[24]

### B. *Judge Shoob's Order Allowing Opt–Ins Based on Grayson's Charge* [25]

Judge Shoob defined the opt-in class as including K Mart store managers who were

itless. Even if we were to apply the doctrine of "law of the case" as between coordinate judges, it would be Judge Shoob's *denial* of severance in *Helton* on September 30, 1993, not Judge Carnes' subsequent grant of severance in *Grayson* on February 22, 1994 that would arguably constitute the "law of the case."

**19.** More accurately, the time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision. *See Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir.1987) (ADEA wrongful termination case in which the Court noted that the 180–day period is counted from the date the employee receives notice of termination); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (Title VII case); *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (section 1983 case).

**20.** "Non-deferral states" are those states without a state law banning age discrimination in employment and without a state entity authorized to grant or to seek relief for victims of such discrimination.

**21.** Deferral states are those states having a state law banning age discrimination in employment and a state entity authorized to grant or to seek relief for victims of such discrimination. "In a deferral state, the claimant must also have commenced proceedings under state law before filing a civil action under the ADEA. The ADEA suit may then be brought at least sixty days after the commencement of state proceedings, or earlier if the state proceedings are terminated before the sixty-day period has expired."

*Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194 (6th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995); 29 U.S.C. § 633(b).

**22.** In summary, if an employee was demoted on Day One, he has 300 days, i.e., until Day 301, to file a charge with the EEOC. That 300 days is included within the time period in which the employee is obliged to commence a suit in court: that is, two years from date of demotion for nonwillful violations and three years from date of demotion for willful violations.

**23.** Congress enacted this sixty-day waiting period to afford the EEOC or state agency the opportunity to informally conciliate disputes and thereby divert them from the courts. Howard Eglit, 1 *Age Discrimination* § 6.37 at 6–229 (2d ed. 1994) (citing Conference Comm., Age Discrimination in Employment Act Amendments of 1978, H.R.Rep. No. 950, 95th Cong., 2d Sess. 12 (1978)).

**24.** *See* Howard Eglit, 1 *Age Discrimination* § 6.37 at 6–230 (2d ed. 1994) (citing Committee on Education and Labor, U.S. House of Representatives, Civil Rights and Women's Equity in Employment Act of 1991, H.R.Rep. No. 40 at 1, 102d Cong, 1st Sess 96–97 (1991); Committee on the Judiciary, Civil Rights Act of 1991, H.R.Rep. No. 40 at 2, 102d Cong. 1st Sess, 41 (1991) U.S.Code Cong. & Admin.News 1991 pp. 549, 579, 634, 635).

**25.** A "charge," as defined by the EEOC, and as used in this opinion, is "a statement filed with the [EEOC] by or on behalf of an aggrieved person which alleges that the named prospective

demoted (or who resigned after being told that they would be demoted) in K Mart's Southern Region, and who were at the time of the demotion or resignation, at least forty years old. (Order filed July 21, 1994 at 2). In defining the temporal scope of the class, Judge Shoob originally granted the plaintiffs' motion to allow all persons who had been demoted or who had resigned from a store manager position anytime during the period from 1990 to 1992, to opt into the class. *Id.*

Later, Judge Shoob accepted the plaintiffs' concession that the proposed class should be limited to putative plaintiffs who had been demoted (or forced to resign) on or after August 18, 1990 [26] if they worked in deferral states, or on or after December 16, 1990 [27] if they worked in non-deferral states. (Order filed Oct. 6, 1994 in *Helton* at 2). In other words, Judge Shoob allowed putative plaintiffs to piggyback onto Grayson's June 14, 1991 EEOC charge.[28]

Because Judge Shoob's definition of the class would include putative plaintiffs demoted prior to November 21, 1991, Judge Shoob's definition of the class would implicate opt-in plaintiffs who are subject to the pre-Civil Rights Act statutes of limitations.

## C. *The Issues*

K Mart challenges Judge Shoob's calculation of the temporal scope of the opt-in class primarily on four grounds. K Mart alleges that:

(a) The piggybacking rule is inapplicable to ADEA cases;

(b) Judge Shoob erred in allowing opt-in plaintiffs to piggyback onto Grayson's EEOC charge, given that Grayson was not an original plaintiff in the *Helton* action but was himself only an opt-in plaintiff;

(c) Judge Shoob's definition of the class improperly allows putative plaintiffs whose own claims would otherwise be time-barred under either the 2–year or 3–year statute of limitations, to opt into the *Helton* action.

(d) The representative EEOC charge upon which putative plaintiffs are permitted to piggyback does not provide adequate notice of class-wide discrimination.

### Issue 1: The Applicability of the Piggybacking Rule in ADEA Cases

■ K Mart alleges that Judge Shoob erred in finding that the piggybacking rule applies to ADEA cases. This is a question of law over which we have de novo review. *See Estate of Kosow v. Commissioner,* 45 F.3d 1524, 1528 (11th Cir.1995). We hold that Judge Shoob did not err.

■ In general, the single-filing (or "piggybacking") rule [29] provides that under some circumstances, a grievant who did not file an EEOC charge may opt into a class action by "piggybacking" onto a timely charge filed by one of the named plaintiffs in the class action. This Court has not directly addressed the issue of whether the piggybacking rule applies to ADEA cases. We have recently recognized, however, in *Calloway v. Partners National Health Plans,* 986 F.2d 446 (11th Cir.1993), that the piggybacking rule is applicable to Title VII cases. We held that an employment discrimination plaintiff may piggyback provided that "(1) the relied upon charge [to which he is piggybacking] is not invalid, and (2) the individual claims of the filing and non-filing plaintiff [the named filing plaintiff and the piggybacking plaintiff] arise out of similar discriminatory treatment

defendant has engaged in or is about to engage in actions *in violation of the Act."* 29 C.F.R. § 1626.3. Mr. Grayson filed his charge with the EEOC on June 14, 1991 ("Grayson's charge").

26. Three hundred days before Grayson's charge was filed.

27. One hundred eighty days before Grayson's charge was filed.

28. Judge Shoob does not explain why he thought Grayson's charge was the appropriate one for plaintiffs to piggyback onto, but we can assume that he did so because he favored the maximum number of plaintiffs and the earliest date for piggybacking.

29. The "piggybacking rule" is synonymous with the "single filing rule," and we will use these terms interchangeably throughout this opinion.

in the same time frame." *Id.* at 450. In *Shuster v. Federated Department Stores, Inc.*, 508 F.Supp. 118 (N.D.Ga.1980), Judge Vining in the Northern District of Georgia, found the piggybacking rule to be applicable to ADEA cases. *Id.* at 121.

There is no reason why piggybacking should be allowed in Title VII cases but not in ADEA cases, given that the ADEA in many ways tracks Title VII, and in light of Congress's policy that ADEA plaintiffs should have the opportunity to proceed collectively. *Hoffmann–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989).

K Mart cites *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir.1977) for the proposition that this Court has rejected the piggybacking rule in ADEA cases. We do not agree. In *Price*, the Court, was not faced with the issue of whether piggybacking is permissible in an ADEA action. Instead, *Price* simply held that an ADEA class action must be maintained as an opt-in class under § 216(b), rather than as an opt-out class under Rule 23. In so holding, *Price* stated that "only those members who had filed a notice of intent to sue [an EEOC charge]" and "who had filed a written consent to becoming plaintiffs in the action would be included in the class." *Id.* at 610–11.

This language, which K Mart reads to mandate that each plaintiff file his own EEOC charge, was only intended to draw a distinction between § 216(b) opt-in class actions and Rule 23 opt-out class actions, and cannot be interpreted to mean a rejection of piggybacking, which was not even an issue in *Price*. Furthermore, even though this circuit has not yet done so, the Fifth Circuit at least has since adopted the piggybacking rule in ADEA cases. *See Anson v. University of Texas Health Science Ctr.*, 962 F.2d 539, 541 (5th Cir.1992).

We hold that piggybacking is available in ADEA cases and that an age discrimination plaintiff may piggyback provided that the *Calloway* requirements, cited *supra*, are satisfied.

In so doing, we would join the majority of circuits. *See Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1223 (5th Cir.1995) (ADEA case in which court stated that the federal courts universally recognize piggybacking rule); *Howlett v. Holiday Inns, Inc.*, 49 F.3d at 194 ("[T]he federal courts to address the issue have uniformly held that the [single filing] rule is applicable in the ADEA context. . . . We join those courts in holding that the single filing rule applies to ADEA cases.") (citing *Anson v. University of Texas Health Science Ctr.*, 962 F.2d 539, 541 (5th Cir.1992)); *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir.1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991).

### Issue 2: The Representative Class Action Charge

K Mart argues that even if the piggybacking rule is applicable to ADEA cases, Judge Shoob erred in allowing putative plaintiffs to piggyback onto Grayson's EEOC charge, given that Grayson was not an original plaintiff in the *Helton* action but was himself only an opt-in plaintiff. As such, Grayson necessarily depended upon the amended *Helton* complaint in 1994 to relate back to the original *Helton* complaint in 1992.

On the other hand, K Mart alleges that Kempton's April 15, 1992 EEOC charge was the first timely filed charge of a *named plaintiff* and thus should be the representative charge from which the rearward scope of any class should be defined.[30] We agree.

The purpose of the requirement that a plaintiff file an EEOC charge within 180

---

**30.** Some confusion has arisen as to when an opt-in charge can be deemed to have operative effect. Because the FLSA speaks in terms of the date that the charge is filed with the EEOC, we consider that to be the effective date. Some of the plaintiffs who are in deferral states, however, have filed their charges with the state agencies. It is significant to us, however, that the briefs of the parties have relied on the dates on which the charges were *signed* rather than *filed* with either the state agency or the EEOC. We see no reason not to give the "signature dates" effect as concessions made by the parties even though, analytically, we believe the correct jurisprudence for the future should be either proof of filing with the state agency in a deferral state or proof of filing with the EEOC in a non-deferral state.

days (or 300 days in a deferral state) of the allegedly illegal act or practice is (1) to give the employer prompt notice of the complaint against it, and (2) to give the EEOC sufficient time to attempt the conciliation process before a civil action is filed. *Larkin v. Pullman–Standard Div., Pullman, Inc.,* 854 F.2d 1549, 1562–65 (11th Cir.1988), *vacated on other grounds sub nom, Swint v. Pullman–Standard,* 493 U.S. 929, 110 S.Ct. 316, 107 L.Ed.2d 307 (1989). The principle behind the piggybacking rule is to give effect to the remedial purposes of the ADEA and to not exclude otherwise suitable plaintiffs from an ADEA class action simply because they have not performed the "useless act of filing a charge." *See* Larson, *Employment Discrimination* § 102.35(b) at 21–276.29—21–276.30. *See Mooney v. Aramco Serv. Co.,* 54 F.3d 1207, 1223 (5th Cir.1995) (" 'It would be wasteful, if not vain for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC.' ") (quoting *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir.1968)).

In general, in applying the single-filing or piggybacking rule, the courts have defined the temporal scope of the class based on the timely filed charge of one of the named plaintiffs. In *Calloway,* this circuit's evolving application of the single-filing rule in the context of Title VII actions was summarized as follows:

> We first invoked the "single-filing rule" in the context of a class action to permit unnamed plaintiffs to rely on the EEOC charge filed by the named plaintiff. We then extended the single-filing rule to permit intervenors who had not filed EEOC charges to rely on the charge of one of the original plaintiffs. Finally, we permitted plaintiffs in multiple-plaintiff, non-class action lawsuits to rely on the charge filed by one of their co-plaintiffs.

*Id.* at 450 (citations omitted).

 This Court has recognized, however, that the charge of someone other than a named plaintiff of the class action can in some circumstances serve as the underlying "piggybacked" charge on which a putative plaintiff can piggyback. For example, in *Larkin v. Pullman–Standard Division, Pullman, Inc.,* 854 F.2d 1549, 1562–65 (11th Cir. 1988), *vacated on other grounds sub nom, Pullman–Standard, Inc. v. Swint,* 493 U.S. 929, 110 S.Ct. 316, 107 L.Ed.2d 307 (1989), the district court had allowed plaintiffs to opt into the Title VII class action based on the 1966 EEOC charge filed by Seals, a plaintiff in a later related class.[31] This Court found that the defendant, Pullman, had waived its right to object because it had known six years earlier of the district court's reliance on 1966 as the measuring date, *id.* at 1557, but did not object until 1983. *Id.* at 1565.[32] The court further found that "in any event," a charge filed by a party other than a named plaintiff could be used to establish the temporal scope of the class, where the charge sufficiently informed both the employer and the EEOC of the imminent class complaint. *Id.* The court noted that it was appropriate to date liability back to 1966 in *Larkin* since:

> Spurgeon Seals filed an EEOC charge in November 1966 complaining that the seniority system was being misapplied on account of his race, and less than six months later, an EEOC Commissioner filed a charge launching a broad-based challenge to Pullman's hiring and promotional practices. By the time Louis Swint [the named plaintiff] filed his 1969 charge, Pullman was well aware that its hiring and promotional practices were under scrutiny, and the EEOC had been given ample time to attempt conciliation. To ignore this and restrict Pullman's liability to 180 days prior to Swint's charge would be nothing more than a technical reading of Title VII which is "particularly inappropriate in a statutory scheme in which layment [sic], unassisted by trained lawyers, initiate the process."

---

**31.** The earliest charge by a named plaintiff in the class action was filed in 1969.

**32.** The timely filing of an EEOC charge is not a jurisdictional prerequisite to bringing a Title VII suit in federal court and thus is subject to waiver and estoppel. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1981).

*Larkin,* 854 F.2d at 1563 (quoting *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972)).

*Larkin* is distinguishable from this case because the defendant in *Larkin* had not objected to dating its liability from the 1966 charge. The court's holding in *Larkin,* therefore, is a holding on waiver and not on the substantive issue of dating. Here, we have no such waiver. K Mart had not waived its objection to the district court's reliance on Grayson's charge.

The plaintiffs also cite *Calloway v. Partners National Health Plans,* 986 F.2d 446 (11th Cir.1993), a Title VII case alleging wage discrimination, in support of its piggybacking argument. In *Calloway,* Steward, a black female, had been fired from Partners National Health Plans ("Partners") in February 1988, after which she filed an EEOC charge on February 19, 1988 alleging discrimination with respect to wages and other employment conditions. Calloway, the only other black female at Partners, resigned in 1989, after attempting unsuccessfully to negotiate a higher salary. Steward filed suit in 1989 after receiving her right to sue notice from the EEOC. Calloway unsuccessfully attempted to intervene in Steward's lawsuit, and the district court treated Calloway's claim as a separate lawsuit. After the bench trial on Calloway's case, however, the district court found Calloway's claim to be sufficiently similar to Steward's claim such that Calloway could rely on Steward's EEOC charge. This Court agreed, holding that Calloway, as an unsuccessful intervenor, could piggyback and rely on Steward's charge provided that the charge was valid and the individual claims of Calloway and Steward arose out of similar discriminatory treatment in the same time frame.

*Calloway,* too, is distinguishable from the present case, in that *Calloway* is a Title VII case; it is a wage-discrimination rather than an age demotion case under the ADEA; and the court in *Calloway* did not define the scope of a class action, but instead made a fact-specific determination that Calloway, an unsuccessful intervenor, could rely on Steward's charge where it was undisputed that both of their claims arose out of similar discriminatory treatment in the same time frame.

In this case, *Grayson*'s charge is particularly inadequate as a representative charge. First, as discussed *infra,* Grayson's own action is time-barred because he failed to file his written consent to opt into the *Helton* class within three years of his demotion. (HR22–147). Grayson was demoted on April 9, 1991, (EEOC Charge of Mercer David Grayson, Appendix to Memorandum of Law in Support of Plaintiffs' Motion to Permit Joinder of Similarly Situated Plaintiffs) (HR–85), and Grayson filed his consent to opt into the *Helton* class more than three years later, on September 19, 1994. (Notice of Filing Consent to Opt In as a Party Plaintiff) (HR–147). Thus, Grayson should be barred from joining the *Helton* class and his charge should not and cannot serve as the representative charge for others in such a case.

Second, even if Grayson's action were not time-barred, his EEOC charge provides insufficient notice of the scope of the class. Grayson's charge stated: "For the past five years, the Company has systematically [retired or] demoted managers in the protected age group and replaced them with younger managers." (Grayson Charge of June 14, 1991). Although this charge puts the EEOC on notice of demotions occurring prior to Grayson's charge, it does *not* put the EEOC on notice of demotions occurring *after* the filing of Grayson's charge on June 14, 1991. Thus, based on Grayson's charge itself, putative plaintiffs who were demoted after June 14, 1991 could not opt into the *Helton* class, even though the *Helton* complaint alleges that K Mart's discriminatory policy led to wrongful demotions through 1991 and into 1992.[33]

Accordingly, in selecting the representative charge for *Helton,* Judge Shoob should not have selected Grayson's charge, but rather should have chosen the first timely filed charge of one of the named plaintiffs that

---

33. For example, among the named plaintiffs: Helton was demoted on March 13, 1992; Kempton was demoted on March 2, 1992; and Payne was demoted on January 27, 1992; Taylor was demoted on March 18, 1991, and Williams was demoted on February 10, 1991.

gives adequate notice of the scope of the class. Kempton's charge of April 15, 1992 is the first timely filed charge of a named plaintiff which gives notice of classwide discrimination.[34] Kempton's charge, read together with the charges of the other named *Helton* plaintiffs, provides adequate notice to the EEOC of the scope of the class alleging discrimination.

### Issue 3: The Statutes of Limitations

Additionally, K Mart argues that Judge Shoob's order improperly allowed the joinder of putative plaintiffs whose own claims would have been untimely under the pre-Civil Rights Act statutes of limitations.[35] The plaintiffs do not dispute the legal rule that putative plaintiffs must satisfy the statute of limitations in order to opt into the class, but they contend that Judge Shoob's formulation of the class did not implicate time-barred claims. We hold otherwise.

The plaintiffs concede that as of October 29, 1992, when the original *Helton* complaint was filed, the complaint did not allege a class action. The plaintiffs further acknowledge that they did not allege a class action until the *Helton* complaint was amended on October 18, 1994, when for the first time a class action was pleaded. The plaintiffs argue, however, that the October 18, 1994 class action amendment should be deemed to "relate back" to the original *Helton* complaint, filed October 29, 1992, such that the original complaint commenced the opt-in plaintiffs' civil class actions.

Thus, under the plaintiffs' theory, a putative plaintiff could have been demoted as early as October 29, 1989 and still have been within the three-year statute of limitations

for willful violations of the ADEA; or demoted as early as October 29, 1990 and still have been within the two-year statute of limitations for non-willful violations of the ADEA. The plaintiffs accordingly argue that Judge Shoob's order, by allowing persons demoted as early as August 18, 1990 in deferral states and as early as December 16, 1990 in non-deferral states, would be timely under either of the statutes of limitations.[36]

■ Although we agree that the October 18, 1994 class action amendment which Judge Shoob granted should relate back to the October 29, 1992 complaint,[37] we disagree with the plaintiffs' contention that the statutes of limitations are tolled for opt-in plaintiffs when the class complaint is filed. The issue of when an opt-in plaintiff is deemed to commence his civil class action (and thus toll the statute of limitations on his claim) is a question of law over which we exercise *de novo* review. *See Estate of Kosow v. Commissioner*, 45 F.3d 1524, 1528 (11th Cir.1995). We are persuaded by K Mart's argument that opt-in plaintiffs commence an ADEA civil action, not when the complaint is filed, but when the putative plaintiff files a written consent to opt into the class action.

It is undisputed that named plaintiffs commence their civil action upon the filing of their complaint. *See O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 394 (8th Cir.1987). However, we have not as yet addressed, and the circuits are split on, the issue of when a civil action is deemed to be commenced by an *opt-in plaintiff* in an ADEA class action. At the root of this controversy is whether ADEA opt-in actions should be governed by the tolling principle of the Fair Labor Stan-

---

34. Kempton was demoted on March 2, 1992.

35. K Mart does not argue that Judge Shoob's definition of the *Helton* class improperly allowed the opting-in of putative plaintiffs whose claims are time-barred under the post-Civil Rights Act ninety-day statute of limitations.

36. Even if we agreed entirely with the plaintiff's theory, we note that Judge Shoob's order, even on its own terms, implicates time-barred claims. As we have earlier stated, Judge Shoob's order allowed plaintiffs who had been demoted in deferral states between August 18, 1990 and October 28, 1990 to opt into the class, even though

such plaintiffs, if they claimed nonwillful violations, would be time-barred by the two-year statute of limitations, as measured by the *Helton* complaint, filed October 29, 1992. Judge Shoob, in entering his order, apparently followed Title VII rather than what we believe to be the correct analogy, the FLSA.

37. K Mart had argued (and argues here) that the class action amendment was untimely and should be denied. Judge Shoob rejected this argument, noting that it was within his discretion to grant leave to amend, and finding no reasons why the amendment should be disallowed.

dards Act or that of Title VII. The Eighth Circuit has held that because the ADEA provides for opt-in joinder by incorporating § 216(b) of the FLSA, that ADEA opt-in plaintiffs should, under 29 U.S.C. § 256(a) of the FLSA,[38] be deemed to commence their civil action only when they file their written consent to opt into the class action. *See O'Connell v. Champion Int'l Corp.*, 812 F.2d 393 at 394.

On the other hand, the Third Circuit has reasoned that because the ADEA did not specifically incorporate 29 U.S.C. § 256(a) of the FLSA, that Congress did not intend for ADEA actions to be subject to that tolling rule. *See Sperling v. Hoffmann–LaRoche, Inc.*, 24 F.3d 463, 467 (3d Cir.1994). That court has instead noted that because the ADEA shares many similarities with Title VII, *id.* at 467 (citing to the district court opinion, *Sperling*, 145 F.R.D. at 358), the statute of limitations for ADEA opt-in plaintiffs should be tolled by the filing of the original class complaint. *Id.* at 472–73.

We are persuaded that the Eighth Circuit's opinion in *O'Connell* states the better view: that is, that ADEA opt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action. In creating a collective action procedure for ADEA actions, Congress clearly adopted the opt-in joinder procedures of section 216(b) of the FLSA and thus impliedly rejected the Rule 23 class action procedures applicable to Title VII actions. *LaChapelle v. Owens Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir.1975). In *LaChapelle*, the court recognized that:

> There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has "opted out" of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively "opted into" the class; that is, given his written, filed consent.

*Id.* at 288.

In addition, "the requirements for satisfying Rule 23 are considerably more involved than is the unitary 'similarly situated' requirement of § 16(b) [§ 216(b)]." Howard Eglit, 1 *Age Discrimination* § 6.50 at 6–304 (2d ed. 1994). Thus, in *LaChapelle*, the Fifth Circuit held that Rule 23 and § 216(b) actions are "mutually exclusive and irreconcilable," *id.* at 289, and "it is crystal clear that § 16(b) [§ 216(b)] precludes pure Rule 23 class actions in FLSA suits." *Id.* at 288. We find that by rejecting the Rule 23 class action procedure for ADEA claims, Congress also rejected the concomitant complaint-tolling rule of Rule 23.

The legislative history of both § 216(b) and the ADEA show that Congress meant for ADEA actions to be governed by the tolling principle of § 256 of the FLSA.

First, with the Portal–to–Portal Act, Congress amended § 216(b) of the FLSA to provide that an employee must file written consents in order to be made a party plaintiff to the collective action under § 216(b). In discussing this amendment, Congress expressed the concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint. 93 Cong. Rec. 2,182 (1947). Thus, by incorporating § 216(b) into the ADEA, Congress also incorporated the principle that only a written consent to opt-in will toll the statute of limitations on an opt-in plaintiff's cause of action.

Second, the legislative history of the ADEA shows that Congress intended to follow the enforcement procedures of the FLSA:

> The enforcement techniques provided by § 830 [the ADEA] are directly analogous to those available under the Fair Labor

---

38. Section 256(a) provides that if a plaintiff joins a pending class action, his action commences when he opts into the action by filing written consent with the court in which the action is pending. 29 U.S.C. § 256(a). This section codifies section seven of the Portal–to–Portal Act.

Standards Act; in fact, S. 830 incorporates by reference, to the greatest extent possible, the provisions of the Fair Labor Standards Act.

113 Cong.Rec. 31,254 (1967). *See* Douglas L. Williams and Julia A. Davis, Age Discrimination Opt–In Class Actions: The Good, The Bad, and The Unresolved, C463 ALI–ABA *157, 191–92 (Nov. 30, 1989). Thus, ADEA class actions, which, as a general matter, track the enforcement procedures of the FLSA, are subject to the tolling principle of § 256 of the FLSA even though § 256 was not specifically incorporated into the ADEA.

■ Accordingly, we conclude that a putative plaintiff must file his written consent to opt into the class action prior to the expiration of the statute of limitations on his ADEA claim.[39] A contrary ruling would mean that the piggybacking rule could be applied to virtually eliminate the statute of limitations for opt-in plaintiffs in ADEA actions.

We therefore direct Judge Shoob to define the *Helton* class to bar putative plaintiffs who have failed to file written consents to opt into the class within two years of their demotions for nonwillful violations or within three years of their demotions for willful violations.

### Issue 4: Notice of Class–Wide Discrimination

K Mart further argues that the underlying EEOC charge failed to give adequate notice of "class-wide" discrimination for purposes of applying the piggyback concept.

■ To serve as the basis of an ADEA class action, the underlying EEOC charge must contain allegation(s) of class-wide discrimination. *See Anson v. Univ. of Texas Health Science Ctr.*, 962 F.2d 539, 541 (5th Cir.1992) ("[M]any courts require that the administrative charge give notice to the administrative agency and the defendant that the discrimination is class-wide."); *Kloos v. Carter–Day Co.*, 799 F.2d 397, 400 (8th Cir.1986) (because the purpose of the charge is to afford the EEOC an opportunity to resolve the dispute short of litigation and because the charge serves to apprise the employer of its alleged wrongdoing, "[a]n allegation of classwide discrimination or claim of class representation" is necessary); *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1016 (7th Cir.1988) ("[T]he charge must, at the very least, contain an allegation of class-wide discrimination."). To make an allegation of classwide discrimination, "there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim," and the charge must alert the EEOC that "more is alleged than an isolated act of discrimination." *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991).

■ We are persuaded that Kempton's charge, when read with the charges of the other named plaintiffs of the *Helton* class, adequately puts the EEOC on notice of the class action being asserted. In the present case, Kempton's April 15, 1992 charge stated that he was demoted on March 2, 1992, and that: "Within the last year, at least fifteen (15) other store managers, all over age 40, have been demoted." (EEOC Charge of Charles Kempton, Appendix to Memorandum of Law in Support of Plaintiffs' Motion to Permit Joinder of Similarly Situated Plaintiffs) (HR–85). Another named plaintiff,

---

**39.** This would of course, apply only to plaintiffs who were subject to the allegedly discriminatory act prior to November 21, 1991, the effective date of the Civil Rights Act of 1991. The Civil Rights Act replaced the two-year and three-year statutes of limitations with a ninety-day period in which to begin a civil action after the plaintiff has received the EEOC's notice that his charge was filed.

For plaintiffs who allege being subject to wrongful conduct occurring after November 21, 1991, an analogous rule would be to allow potential plaintiffs ninety days from the date they receive the notice of the opt-in class, to file their written consent to opt into the class. *But see Anderson v. Unisys Corp.*, 47 F.3d 302, 308–09 (8th Cir.1995) (holding that nonfiling piggybacking plaintiffs who were demoted post-Civil Rights Act may opt into a class so long as the claimant upon whose EEOC charge they are piggybacking files suit within ninety days of receiving a right-to-sue letter from the EEOC), *cert. denied*, —— U.S. ——, 116 S.Ct. 299, 133 L.Ed.2d 205 (1995). *Compare O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 394 (8th Cir.1987).

James Taylor, filed a charge on June 18, 1992, stating that: "Other older store managers have been demoted." (HR–85). Yet another named plaintiff, Robert Williams, filed a charge stating that: "At least six other store managers, over age 40 years, were also demoted and cut in pay." (HR–85).[40]

Accordingly, we hold that Kempton's, Taylor's, and possibly Williams' charges give notice to the EEOC of classwide discrimination occurring up to at least March 2, 1992. In contrast, Grayson's charge only gives notice of discrimination occurring up to June 14, 1991.[41]

## V. Conclusion

We hold in the opinion proper that (i) Judge Shoob properly applied piggybacking to this ADEA case; (ii) putative plaintiffs should be allowed to piggyback only on the timely filed EEOC charge of an original *named plaintiff* of class action; and (iii) the ADEA statutes of limitations, pertaining to the claims by those opt-in plaintiffs who were demoted prior to November 21, 1991 (the effective date of the 1991 Civil Rights Act), are tolled by the filing of the opt-in plaintiffs' written consents to opt in, not by the filing of the original *Helton* complaint. We also hold, in agreement with Judge Shoob, that on the record before us, the representative charges gave adequate notice of classwide discrimination.

Thus we will AFFIRM Judge Shoob's July 21, 1994 Order allowing the creation of an opt-in joinder class pursuant to 29 U.S.C. § 216(b). However, we will REVERSE and REMAND the proceeding so that Judge Shoob may modify the temporal scope of the *Helton* class consistent with the foregoing opinion.

**40.** There appears to be a factual dispute as to when Williams was demoted or unequivocally notified of his demotion. This fact would have to be determined by the district court.

**41.** Finally, the plaintiffs argue on cross-appeal that if this Court reversed Judge Shoob's § 216(b) ruling or otherwise barred the *Grayson* plaintiffs from opting into the *Helton* action, that the Court should reverse Judge Carnes' severance order and reconsolidate the *Grayson* case.

## EXHIBIT A

## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

Carl Helton et al., Plaintiffs,

v.

K Mart Corp., Defendant.

Civil Action No. 1:92–cv–2564–MHS.

Filed July 21, 1994.

### *ORDER*

This action is before the Court on various motions. The Court's rulings are summarized below.

### I. *MOTION TO MODIFY CONFIDENTIALITY ORDER*

Plaintiffs have moved that the Court modify the Consent Protective Order entered November 30, 1993, to permit information and documents designated as "confidential" under that order to be used by plaintiffs' lawyers and their clients in *Grayson et al. v. K Mart Corporation*, 1:92–cv–141–JEC, and in *Sands et al. v. K Mart Corporation*, 1:93–cv–20330–JEC, consistent with the confidentiality orders in place in those cases. Because discovery has closed in the *Grayson* and *Sands* cases and granting plaintiffs' motion would have the effect of extending discovery in those cases, the Court denies the motion. Any further extension or supplementation of discovery in *Grayson* or *Sands* should be determined by Judge Carnes and not by modification of the protective order in this action.[1]

Because we affirm Judge Shoob's § 216(b) ruling, we need not reach this issue.

**1.** The Court abhors the possibility of multiple discovery motions to obtain permission from this Court to use materials in this action that were produced and labeled as confidential by defendant in *Grayson* and *Sands*. The Court strongly encourages the parties to work out such discovery disputes without the Court's involvement. *See* Fed.R.Civ.P. 37.

## II. *MOTIONS TO PERMIT JOINDER, FOR LEAVE TO AMEND, AND TO AUTHORIZE NOTICE*

Plaintiffs have filed a motion to permit joinder of similarly situated additional plaintiffs under 29 U.S.C. 216(b), for leave to amend the complaint, and to authorize notice to potential additional plaintiffs. For the reasons stated below, the Court grants these motions.

Plaintiffs in this action are five former store managers of Kmart retail stores who claim that they were discriminated against on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). They allege that between 1990 and 1992, following a company-wide reorganization, plaintiffs "were victims of an age-motivated purge" of store managers in Kmart's southern region. They seek to allow persons to join in this action who were demoted or resigned from the position of store manager during the 1990–1992 period and were at least 40 years old. They request leave to amend their complaint to add that the action is brought on behalf of other similarly situated persons and ask the Court to approve issuance of a notice to the potential additional plaintiffs informing them of their right to join in the action.

### A. *Joinder*

The ADEA incorporates the procedures of the Fair Labor Standards Act ("FLSA") for combining claims of similarly situated plaintiffs. The procedure under the FLSA provides for an "opt-in class action." 29 U.S.C. § 216(b).

Defendant argues that an opt-in class action is not appropriate here because plaintiffs have not made substantial allegations that the additional plaintiffs are similarly-situated. Defendant claims that the record does not support plaintiffs' claim that the additional class members are similarly situated. Defendant points to the February 22, 1994 Order by Judge Carnes in a similar case, ruling that the plaintiffs' claims in that case should be severed because plaintiffs had not directed the court's attention to any "discrete program or procedure employed by Kmart that affected each of the plaintiffs." This Court, however, does not interpret the "similarly situated" language of 29 U.S.C. § 216(b) as requiring plaintiffs to demonstrate a "discrete program or procedure" affecting each of the potential plaintiffs.

"Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively. A collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the poolings of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffman [Hoffmann]–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 [110 S.Ct. 482, 486, 107 L.Ed.2d 480] (1989). In this action, plaintiffs are alleging an upper management policy of age discrimination that affected plaintiffs and the "opt-in class" of plaintiffs. These allegations describe the circumstances giving rise to the alleged upper management policy and the manner in which that policy allegedly resulted in age discrimination against a class of plaintiffs. Furthermore, these allegations are supported by deposition and affidavit evidence. The Court concludes that plaintiffs have made substantial allegations of common issues of law and fact arising from the same alleged discriminatory activity that is sufficient to warrant granting plaintiffs the opportunity to proceed collectively.

Defendant further argues that the charges filed by plaintiffs did not provide the Equal Employment Opportunity Commission ("EEOC") with notice that plaintiffs were seeking to represent a class. Defendant claims that individuals may opt-in under the provisions of 29 U.S.C. § 216(b) only if one or more of the plaintiffs filed EEOC charges giving the EEOC notice of the class nature of the claims so that the EEOC could attempt to fulfill the conciliatory purpose of the notice requirements of 29 U.S.C. § 626(d). *See Kloos v. Carter–Day Co.,* 799 F.2d 397, 402 (8th Cir.1986); *Church v. Consolidated Freightways, Inc.,* 137 F.R.D. 294, 300–01 (N.D.Cal.1991). Defendant claims that plaintiffs' EEOC charges did not allege either

class-wide discrimination or that they were filed on behalf of a class.

All of the circuits that have addressed this issue have held that the timely filing of an administrative claim by a named plaintiff in a § 216(b) class action satisfies the filing obligation of all members of the class as long as the administrative claim gave notice to the administrative agency of alleged class discrimination.[2] *Tolliver v. Xerox Corp.,* 918 F.2d 1052, 1058 (2nd Cir.1990) (even where an ADEA class action has been decertified, individuals may piggyback onto an administrative claim filed by another individual as long as the claim indicated that the grievance affects a group of individuals, alerting the administrative agency that more is alleged than an isolated act of discrimination and giving sufficient notice to the employer for it to explore conciliation with the affected group); *Anderson v. Montgomery Ward & Co., Inc.,* 852 F.2d 1008, 1016 (7th Cir.1988) (similarly situated individuals can opt-in to a suit if the plaintiff's administrative claim gave notice to the administrative agency and the defendant that the discrimination is class-wide); *Lusardi v. Lechner,* 855 F.2d 1062, 1078–79 (3rd Cir.1988) (so long as class issues are alleged, a timely charge may serve as the basis for a class action); *Kloos v. Carter–Day Co.,* 799 F.2d 397, 400 (8th Cir. 1986) (to serve as a basis for a class action, claim must allege class-wide discrimination or that it represents class); *Naton v. Bank of California,* 649 F.2d 691, 697 (9th Cir.1981) (claimant must purport in the administrative claim to represent a class or others similarly situated); *Mistretta v. Sandia Corp.,* 639 F.2d 588, 593–94 (10th Cir.1980).

In this action, plaintiff Kempton's administrative claim states that "[w]ithin the last year, at least fifteen (15) other store managers, all over age 40, have been demoted." Plaintiff Taylor's administrative claim states that "[o]ther older store managers have been demoted." Plaintiff Bob Williams' administrative claim states that "[a]t least six other store managers, over age 40 years, were also demoted and cut in pay." The Court concludes that these timely filed administrative claims filed by three of the five named plaintiffs in this action gave notice of class discrimination to the EEOC and to Kmart, alerting the agency and employer that more is alleged than an isolated act of discrimination and that these claims therefore satisfy the filing obligation of all members of the class. Accordingly, the Court grants plaintiffs' motion to permit joinder of similarly situated additional plaintiffs under 29 U.S.C. § 216(b).

### B. *Leave to Amend*

Defendant argues that the Court should deny plaintiffs' motions as untimely. "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Nolin v. Douglas County,* 903 F.2d 1546, 1550 (11th Cir.1990). District courts have only limited discretion to deny a party leave to amend the pleadings. *Espey v. Wainwright,* 734 F.2d 748 (11th Cir.1984); *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594 (5th Cir.1981). Thus, the Court is constrained to allow a plaintiff leave to amend unless there is substantial countervailing reason. *Id.* In determining whether to grant leave to amend, a court may consider undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. *Nolin,* 903 F.2d at 1550 (citing *Foman v. Davis,* 371 U.S. 178, 182 [83 S.Ct. 227, 230, 9 L.Ed.2d 222] (1962)).

After reviewing the motion and responses in this action, the Court concludes that defendant has not demonstrated any substantial countervailing reasons to deny plaintiffs leave to amend and grants plaintiffs' motion to amend the complaint to add that the action is brought on behalf of other similarly situated individuals.

---

**2.** The Eleventh Circuit has never decided whether individuals that have not filed an administrative claim can opt-in to a suit filed by a similarly situated plaintiff who timely filed an administrative claim. *See McCorstin v. United States Steel Co.,* 621 F.2d 749, 755 (5th Cir.1980).. In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all cases decided by the Fifth Circuit before September 30, 1981.

### C. *Notice*

Plaintiffs have requested that the Court approve issuance of a notice to the potential additional plaintiffs informing them of their right to join in this action. In *Hoffman [Hoffmann]–La Roche, Inc. v. Sperling*, 493 U.S. 165 [110 S.Ct. 482, 107 L.Ed.2d 480] (1989), the Supreme Court approved district court involvement in the notification process to potential opt-in members in an ADEA § 216(b) class action. The Supreme Court held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b), as incorporated by 29 U.S.C. § 626(b), in ADEA actions by facilitating notice to potential plaintiffs." *Id.* at 169 [110 S.Ct. at 485].

Defendant argues, however, that it should not be ordered to provide names and addresses of all store managers demoted in the southern Region during 1990–92 and those who resigned after notice of demotion, because only those former store managers who timely filed EEOC claims would be eligible to opt-in, under what defendant claims is binding precedent. *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir.1977). The Court notes that the *Price* decision was rendered before the 1978 amendment to the ADEA concerning the notice requirement which has been interpreted by the courts as not requiring each plaintiff to have filed a timely administrative claim. *See Lusardi*, 855 F.2d at 1077; *see also, McCorstin*, 621 F.2d at 755. In addition, in cases filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq., the Eleventh Circuit has adopted the "single filing" rule allowing a plaintiff who has not filed an EEOC claim to rely on another plaintiff's EEOC claim if the claim was timely and arose out of similar discriminatory treatment in the same time frame. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 449–50 (11th Cir.1993). The purpose of the notification requirement in Title VII is analogous to that of the ADEA. Accordingly, the Court does not agree with defendant that only those individuals that timely filed an administrative claim are eligible under § 216(b) and grants plaintiffs' motion that the Court approve issuance of a notice to the potential additional plaintiffs informing them of their right to join the action.

### III. *SEVERANCE AND CHANGE OF VENUE*

For the reasons stated above for granting plaintiffs' motion to permit joinder of similarly situated additional plaintiffs under § 216(b), the Court denies defendant's motion for severance of the parties, for change of venue as to the Florida plaintiffs, and for severance of state law claims.

### IV. *CONCLUSION*

In summary, the Court DENIES plaintiffs' motion to modify the confidentiality order [# 73]; GRANTS plaintiffs' motion to permit joinder of similarly situated additional plaintiffs [# 85–1]; GRANTS plaintiffs' motion for leave to amend complaint [# 85–2]; GRANTS plaintiffs' motion to authorize notice to potential additional plaintiffs [# 85–3]; DENIES defendant's motion for severance and change of venue [# 92]; GRANTS the motion to intervene as party plaintiffs of Mike Williams, Larry Good, and Robert Windell [# 84–2]; GRANTS the motion to intervene as party plaintiffs of Robert Defoe, Robert Ennis, Edna Portilla, and David Wright [# 88–1]; DENIES the motion to intervene as party plaintiff of Jerry Matson [# 88–2]; and GRANTS, for the reasons stated in defendant's brief, defendant's motion for a protective order [# 82].

IT IS SO ORDERED, this 20 day of July, 1994.

/s/ Marvin H. Shoob
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia