Justin BEECHER and Pricilla Cain, on behalf of themselves and all those similarly situated, Plaintiffs

v.

STEAK N SHAKE OPERATIONS, INC., Defendant.

Civil Action No. 1:11–CV–4102–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 27, 2012.

Alan Howard Garber, Marc N. Garber, The Garber Law Firm, P.C., Marietta, GA, Diane Cherry, The Cherry Law Firm, Kennesaw, GA, for Plaintiffs.

Benjamin D. Briggs, Heather Grace Havette, Seyfarth Shaw, John F. Meyers, Barnes & Thornburg LLP, Atlanta, GA, for Defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This case, involving claimed minimum wage and overtime violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, is before the Court on: Plaintiffs' Motion and Renewed Motion for Conditional Collective–Action Certification and Class Notice [Doc. 23; Doc. 41]; Defendant's Notice of Objections to, and Motion to Strike, Evidentiary Exhibits Submitted

in Support of Plaintiffs' Motion for Conditional Collective–Action Certification and For Court–Approved Notice to the Collective Action Class [Doc. 51]; Defendant's Motion to Stay Discovery [Doc. 55]; and Plaintiffs' Motion for Leave to Exceed Page Limit as to Plaintiffs' Reply in Support of their Motion for Conditional Certification and Court–Supervised Notice to Opt-in Plaintiffs [Doc. 70].

For the reasons stated herein, the Court finds as follows: Plaintiffs' Motion for Conditional Collective–Action Certification and Class Notice [Doc. 23] is DISMISSED AS MOOT; Plaintiffs' Renewed Motion for Conditional Collective–Action Certification and Class Notice [Doc. 41] is DENIED; Defendant's Notice of Objections to, and Motion to Strike, Evidentiary Exhibits Submitted in Support of Plaintiffs' Motion for Conditional Collective–Action Certification and For Court–Approved Notice to the Collective Action Class [Doc. 51] is DENIED; Defendant's Motion to Stay Discovery [Doc. 55] is DENIED AS MOOT; and Plaintiffs' Motion for Leave to Exceed Page Limit as to Plaintiffs' Reply in Support of their Motion for Conditional Certification and Court–Supervised Notice to Opt-in Plaintiffs [Doc. 70] is GRANTED.

## I. *Factual Background*

Defendant Steak N Shake Operations, Inc. ("Steak N Shake," "SnS," or "Defendant") has over 400 corporate restaurants,[1] or stores, throughout the country [Doc. 50 at 3]. The stores are divided into five "Group Markets": (1) Chicago/Detroit, (2) Cleveland/Dallas, (3) Indianapolis, (4) Orlando/Atlanta, and (5) St. Louis [*Id.*]. Defendant subdivided these Group Markets into groups of three to ten stores, known as "Districts," which are overseen by a

---

1. Plaintiffs have limited this suit to these company-owned restaurants [Doc. 41 at 1 n.1].

district manager [*Id.*]. Each store has one or more managers and a spectrum of hourly-paid positions, including: production team members, consisting of grillers, fryers, sandwich dressers, dishwashers, fountain drink operators, and like positions; service team members, or servers and server trainers; and operations supervisors, who assist managers [*Id.* at 3–4]. Of these hourly-paid positions only servers and server trainers can receive tips [*Id.* at 7].

Defendant's stores all utilize the same system, the Point of Sale ("POS") system, for employees to report their hours worked and tips received. Specifically:

[A]ssociates are required to clock in and clock out of [the] POS system when they start and end work. Tipped associates are required to enter their cash tips into the POS system when they clock out. The system automatically captures the credit card tips that each associate earns during his or her shift. When an associate completes the clock out process, [the] POS system prints a report, which is also referred to as a "chit," reflecting the hours and total tips that associate recorded for the job or for the current clock in/out record. These chits provide the associates a means of comparing what they recorded in the Company's time and tip recording system to the information on their paychecks.

[Decl. of Mark Doerr, Manager of Point of Sale Systems, Doc. 50–17 ¶ 3].

The local store manager or its operations supervisor can check each employee's punch-in record [Doc. 50 at 10]. The manager or operations supervisor may determine that the clock in/clock out times do not correctly reflect the hours actually worked, and in such an instances is authorized to change the times for payroll purposes, no later than the Wednesday following the end of the pay period [Doc. 50–17 ¶ 5; Doc. 50 at 7–8, 10–12]. Also, if the reported tips are too low, an upward adjustment may be made which could avoid the need for a minimum wage differential payment [Doc. 50 at 11]. When these changes are made, Defendant's records, specifically the Audit–Trail Reports, retain the information as to hours and tips originally claimed by the employees, plus any adjustments made by a supervisor [Doc. 50–17 ¶¶ 5–6].

Defendant employs "approximately 18,000 hourly employees at any given time" [*id.*] and has paid "more than $18 million in overtime compensation and more than $1.3 million in minimum wage differential payments" since November 2008 [Doc. 50–4 ¶ 4]. Moreover, based on employee records, Defendant estimates it has employed approximately 65,000 hourly employees since November 2008 [*Id.*]

## II.  *Procedural History*

### A.  *Plaintiffs' Suit against Steak N Shake*

Plaintiffs Justin Beecher and Priscilla Cain ("Plaintiffs") brought this action against Defendant for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiffs worked at Defendant's Woodstock Road store in Roswell, Georgia, and Plaintiff Cain also worked at the Barrett Parkway store in Kennesaw, Georgia [Doc. 19 ¶¶ 15–16]. Plaintiff Beecher "performed every hourly-paid position including, but not limited to, operations supervisor, production trainer and server," and Plaintiff Cain worked as a server and server trainer [*Id.*].

Plaintiffs submitted declarations stating they were not paid proper overtime compensation when they worked in excess of forty hours a week [Doc. 41–6 ¶ 6; Doc. 42–1 ¶ 8]. Plaintiffs further declare that their managers were aware of this unpaid

overtime, but failed to take action [Doc. 41–6 ¶ 6; Doc. 42–1 ¶ 8]. Plaintiffs also state that at times they were paid less than minimum wage [Doc. 41–6 ¶ 7; Doc. 42–1 ¶ 9]. Plaintiff Cain adds:

> Each day of my employment at STEAK N SHAKE, I clocked-in at the beginning of my scheduled shift and clocked-out when I was finished working. However, the number of hours for which STEAK N SHAKE paid me each week was less than the hours I actually worked each week based on when I clocked in and clocked out each day.

[Doc. 41–6 ¶ 5]. Plaintiffs allege this lack of receipt of overtime compensation or minimum wage resulted from Defendant's store management "ma[king] incorrect and false adjustments" to records by deleting hours worked [Doc. 41–6 ¶ 7a; Doc. 42–1 ¶¶ 10–11].

Plaintiff Cain also claims that when she worked as a server and server trainer, Defendant failed to pay her a minimum wage differential, which she was entitled to when her wages and tips combined fell below minimum wage [Doc. 41–10 ¶ 10]. Furthermore, Plaintiff Cain alleges that when she had such a wage shortfall, Defendant "incorrectly and falsely inflated" her weekly tips, so that it appeared Defendant paid her minimum wage [Id. at 11]. Plaintiffs claim Defendant's "Audit–Trail Report" shows such alterations [Doc. 19 ¶ 33].

Plaintiffs sued Steak N Shake on behalf of themselves and other employees pursuant to 29 U.S.C. § 216(b). Plaintiffs allege Defendant purposely and in bad faith altered work records, resulting in employees not being compensated for all of their work and receiving less than minimum

wage [Id. ¶¶ 44–45, 91–102]. Thus, Plaintiffs claim violations of the minimum wage and overtime requirements set forth in 29 U.S.C. §§ 206(a) and 207 [Id. ¶¶ 91–102]. Plaintiffs seek: a declaratory judgment that Defendant violated the FLSA; recovery of lost compensation, liquidated damages, and attorneys' fees and costs; and any other relief deemed appropriate by the Court [Doc. 19 at 24–25]. Plaintiffs also request a jury trial on all triable issues [Id.].

### B. Plaintiffs' Renewed Motion for Conditional Certification

Plaintiffs have now moved[2] for conditional certification of a collective class pursuant to 29 U.S.C. § 216(b) [Doc. 41 at 1]. Plaintiffs defined potential class members as:

> *All hourly-paid employees* who worked at anytime from November 28, 2008 to [date of Court's certification order] *at any STEAK N SHAKE restaurant owned by defendant STEAK N SHAKE OPERATIONS, INC.* and to whom the defendant failed to pay such employees:
>
> (i) the minimum wage required by federal law for all hours worked; and/or
>
> (ii) proper overtime compensation for all hours worked in excess of forty hours per week required by federal law.

[Id. (emphasis added)]. Plaintiffs also seek: (1) the Court's approval of their proposed notice [Doc. 41–3] to be mailed to putative class members [Doc. 41 at 1]; and (2) an order requiring Defendant, within twenty days of the order granting conditional certification, to provide Plaintiffs with an electronic copy of the names, last known addresses, and last four social secu-

---

**2.** Plaintiffs originally filed this motion on December 20, 2011 [Doc. 23], and subsequently filed a renewed motion for conditional certification of a collective class on April 9, 2012

[Doc. 41]. Plaintiffs' original motion [Doc. 23] is dismissed as moot because of the renewed motion with an amended brief.

rity digits for putative class members [*Id.* at 1–2].

In their Motion, Plaintiffs note: Defendant's managers were in part evaluated on their ability to limit overtime pay and total labor costs [Doc. 41–1 at 2]; daily and weekly reports were sent to Defendant's managers tracking labor costs, specifically overtime and minimum wage differentials owed [*id.*]; and Defendant's Audit–Trail Reports contain proof of unwarranted alterations to employees' hours worked and tips received. Plaintiffs also set forth perceived similarities between Defendant's different restaurants, such as uniform positions, hierarchy, and operations [*Id.* at 6–8, 10–11].

### C. Defendant's Response

Defendant filed a response, claiming Plaintiffs failed to meet the legal standard for conditional certification [Doc. 50]. Defendant states Plaintiffs, named and opt-in, "worked almost exclusively within a single market in Atlanta, Georgia at 4 stores within a 32–mile radius" [*Id.* at 1]. Accordingly, Defendant claims certifying a putative class of 65,000 is not justified because Plaintiffs "represent[ ] less than .04%" of this class [*Id.* at 3, 31–33].

Defendant also asserts that Plaintiffs are not similarly situated. Defendant argues Plaintiffs have failed to show a "uniform policy or practice that violated Plaintiffs' rights under the FLSA" [Doc. 50 at 2, 18–24].

Defendant contends that not only were the reports Plaintiffs cited kept in compliance with the FLSA [Doc. 19 ¶ 25], but Defendant used these reports for a valid purpose—managing labor costs. Moreover, Defendant provides a large number of legitimate reasons for correcting associates' time and tip entries [Doc. 50 at 3]. Such reasons include:

Associates failing to clock in or out at the beginning or end of their shifts or for unpaid breaks (failing to clock out requires manual entry of 'out' time and cash tips); [a]ssociates failing to accurately record cash tips; [and] [a]n associate finishing work, sitting down for a meal and then clocking out.

[*Id.* at 11].

Defendant argues that Plaintiffs' claims are individualized and will "require correction-by-correction mini-trials of more than 2 million corrections made to time and tip records of the putative class" [*Id.* at 3, 12, 27]. Additionally, any changes were made by local supervisors [Doc. 50–17 ¶ 5 ("The majority of corrections are made by local supervisory personnel in SnS's Shift Editor system, which can be done at any time before noon on the Wednesday after the associate's pay period closes.") ], and Defendant claims that any instances of unpaid overtime or minimum wage differential are "a small handful of isolated infractions" [Doc. 50 at 20]. Hence, Defendant argues that such occurrences have no relation to the nationwide class Plaintiffs seek to represent.

Defendant explains that while it tries to manage labor costs, and it is a basis of evaluation of its managers and stores [*id.* at 14–15], responsibility for managing and controlling labor costs lies with the individual store management teams [*Id.* at 12–15]. Moreover, Defendant used numerous components in grading performance of managers, not just labor costs [*Id.* at 14–15]. In fact, Defendant claims that "the customer satisfaction metrics—not labor cost—have the greatest impact on the success of the store and manager evaluations" [*Id.*].

Lastly, Defendant alludes to the fact that it diligently corrected any unwarranted alterations. Specifically, Defendant notes:

Managers who engage in the falsification of time or compensation records are subject to discipline, including immediate termination. SnS actively investigates and addresses any concerns or issues regarding associate pay. If a violation is found, the manager is disciplined. Indeed, SnS has terminated managers for improperly altering associate time records and/or pay. After taking appropriate disciplinary action against these managers, SnS ensured that the associates were properly compensated for all hours worked, including any applicable overtime premium for any hours worked over 40.

[Decl. of Steve Mincin, Director of Human Resources, Doc. 50–5 ¶ 12].

Accordingly, Defendant urges the Court to deny Plaintiffs' Motion for Conditional Collective–Action Certification.

Plaintiffs submitted a reply to Defendant's response on July 10, 2012 [Doc. 67].[3]

### D. Evidence Submitted with Plaintiffs' Motion

Plaintiffs attached to their renewed motion the declarations of ten employees, including named Plaintiff Cain [Doc. 41–6], and nine opt-in Plaintiffs, including: Brittany Barnes [Doc. 41–7]; Cory Cain [Doc. 41–8]; Christina Fontana [Doc. 41–9]; Adriun Hawkins [Doc. 41–10]; Allison Hines [Doc. 41–11]; William Lewis [Doc. 41–12]; Raquel Roman [Doc. 41–13]; Desire Smith–Plourde [Doc. 41–14]; and Royce Nanette Tempus [Doc. 41–15]. These employees held hourly positions in Defendant's stores located in: Atlanta, Georgia; Hiram, Georgia; Kennesaw, Georgia; Roswell, Georgia; Woodstock, Georgia; Joliet, Illinois; and Arlington, Texas [*See* Doc. 41–6; Doc. 41–7; Doc. 41–8; Doc. 41–9; Doc. 41–10; Doc. 41–11; Doc. 41–12; Doc. 41–13; Doc. 41–14; Doc. 41–15]. These employees held various positions including: server; service trainer; cleaner; fountain drink operator; dresser; griller; dishwasher; fryer; cash register worker; drive-thru operator; and operations supervisor [*See, e.g.,* Doc. 41–6 ¶ 4; Doc. 41–9 ¶ 4; Doc. 41–10 ¶ 4; Doc. 41–11 ¶ 4; Doc. 41–15 ¶ 3].

In their declarations, Plaintiffs, named and opt-in, all make the same general assertions. For example, declarants claim on occasion they were paid less than minimum wage [*e.g.,* Doc. 41–7 ¶ 5; Doc. 41–9 ¶ 7; Doc. 41–10 ¶ 6; Doc. 41–15 ¶ 7], they were not paid overtime [*e.g.,* Doc. 41–9 ¶ 7; Doc. 41–10 ¶ 6; Doc. 41–15 ¶ 6], and not paid for all hours worked [*e.g.,* Doc. 41–9 ¶ 5; Doc. 41–10 ¶ 5; Doc. 41–15 ¶ 5]; but, declarants fail to provide examples or dates of such allegedly unlawful activity. In other words, Plaintiffs proffer declarations replete with "cookie-cutter" statements void of specificity.

Plaintiffs also submitted printouts from the website http://eCorproateOffices.com/steaknshake, which allegedly contain, among other things, five complaints from Defendant's employees about insufficient and improper compensation [Doc. 41–5 at 3–4, 6, 11, 12].[4]

On April 9, 2012, the same day Plaintiffs filed their renewed motion, Plaintiffs filed

---

**3.** On July 10, 2012, in addition to filing their reply [Doc. 67] Plaintiffs filed a Motion for Leave to File Excess Pages as to Plaintiffs' Reply in Support of Their Motion for Conditional Certification [Doc. 70], seeking four extra pages for their reply. Having read and considered the motion to exceed page limit [Doc. 70], it is hereby GRANTED.

**4.** One of these complaints was posted by opt-in Plaintiff Fontana's fiance on September 25, 2011 [Doc. 41–9 ¶ 12]. Another one of these complaints was posted by opt-in Plaintiff Hawkins [Doc. 41–10 ¶ 8], on March 23, 2011.

a Notice of Filing Additional Exhibits in Support of Plaintiffs' Renewed Motion for Conditional Collective–Action Certification and Class Notice [Doc. 42]. Included in this filing was a declaration from named Plaintiff Justin Beecher [Doc. 42–1]. Attached to Beecher's declaration were a large number of exhibits including: alleged emails between Defendant's managers about adjusting schedules to assure no employee worked overtime [Doc. 42–2]; overtime reports [Doc. 42–3; Doc. 42–4]; a minimum wage differential report [Doc. 42–5]; a labor cost report [Doc. 42–6]; Audit–Trail Reports [Doc. 42–7; Doc. 42–8; Doc. 42–9; Doc. 42–10; Doc. 42–11] [5]; printouts from Defendant's website [Doc. 42–12; Doc. 42–13]; and an excerpt from Defendant's associates' handbook [Doc. 42–14; Doc. 42–15; Doc. 42–16; Doc. 42–17]. Overall, the exhibits attached to Beecher's declaration show that Defendant's management expressed concern over the accrual of overtime by employees, and made a conscious decision to manage schedules to prevent overtime work.

On May 8, 2012, Plaintiffs filed an additional declaration from opt-in Plaintiff Daniel Bross [Doc. 48–1].

### E. Evidence Submitted with Defendant's Response in Opposition to Plaintiffs' Motion

Defendant produced nearly ninety declarations denying Plaintiffs' allegations. Specifically, Scott Gallagher, Division President for the Orlando–Atlanta Group Market, submitted a declaration [Doc. 50–3] in which he explains that while Defendant has a policy to pay overtime and minimum wage differentials, stores are directed to manage labor costs and review schedules to assure employees are scheduled to work less than forty hours a week [Id.]. Gallagher also explains some of the different internal reports used, and provides legitimate reasons for why a local manager would need to correct an associate's record [Id.]. Diana Bingman, Defendant's Payroll Manager, also submitted a declaration [Doc. 50–4], in which she estimates since November 2008, Defendant has: employed approximately 65,000 hourly associates; paid $18 million in overtime compensation to hourly employees; and made $1.3 million in minimum wage differential payments to hourly employees [Id.].

In his declaration [Doc. 50–5], Steve Mincin, Defendant's Director of Human Resources, rebuts some of Plaintiffs' claims. For example, Mincin notes that after a review of employment records, Plaintiff Beecher "was paid overtime during 30 pay periods for a total of $3,877.67 in overtime pay" and "received a minimum wage differential payment in 5 pay periods" [Id. ¶ 14]. Moreover, opt-in Plaintiff Tempus received a manual check adjustment on August 26, 2011, increasing her payment so that she "was paid the minimum wage for all hours worked during those shifts in addition to any tips received" [Id. ¶ 15]. Plaintiff Cain also received minimum wage differential payments and overtime premiums, and when her records were changed, they were corrected in her favor [Id. ¶ 19]. Mincin contradicts other claims made by opt-in Plaintiffs, including Cain, Barnes, Hawkins, and Fontana [Id. ¶¶ 23, 25, 26]. Attached to Mincin's declaration were excerpts from the associates' handbook and administrative manual, and earnings and time records supporting his claims that Plaintiffs,

---

**5.** The reason shown for almost all of the changes made is "Forgot to clock in" [Doc. 42–7; Doc. 42–8; Doc. 42–9; Doc. 42–10]. Defendant states that the reason for this repeating explanation is that it is the default explanation the system gives if a manager does not fill in that field [Doc. 50 at 12 n.11].

named and opt-in, were properly compensated [Docs. 50–6 through 50–16].

Mark Doerr, Manager of Defendant's Point of Sale Systems, also submitted a declaration [Doc. 50–17], explaining Defendant's system for recording hours worked and tips received, and the process for making corrections to such records [*Id.*]. Michael Hill, General Manager of the Buford Drive store in Buford, Georgia, submitted a declaration [Doc. 50–18] detailing in part, how he manages his store's labor budget, such as through the use of reports [*Id.*]. Hill also states that he has never been "directed to ... shave associates' hours from the timekeeping system" [*Id.* ¶ 13]. Hill also notes that some of the corrections he made were due to a glitch in the computer system, in which credit card tips were not automatically recorded [*Id.* ¶ 16]. Additionally, Hill rebuts part of Plaintiff Cain's claims, stating Plaintiff Cain "rarely worked more than 25 hours in a workweek," and he "do[es] not recall ever making any corrections to ... Cain's time records other than to clock her in or clock her out when she forgot to do so" [*Id.* ¶¶ 19–20]. Attached to Hill's declaration are the corresponding time records for Plaintiff Cain [Doc. 50–18 at 17–20].

Defendants further submitted declarations from: Roger Kesel, General Manager for the District encompassing the stores in Austell, Georgia, Woodstock, Georgia, Acworth, Georgia, Hiram, Georgia, and Roswell, Georgia [Doc. 50–23]; Ricky Waters, General Manager of some of the stores where Plaintiffs, named and opt-in, worked [Doc. 50–24]; and Charlie Reddick, General Manager of the Roswell, Georgia store [Doc. 50–25]. In these filings, declarants describe in part, how labor costs were managed and why, on occasion, they had to make changes to employees' records. Declarants Kesel and Waters also provide the context for the emails attached to Plaintiff Beecher's declarations, and rebut Plaintiffs' negative characterization of these exchanges [*e.g.*, Doc. 50–23 ¶¶ 8–10; Doc. 50–24 ¶¶ 12–15].

Defendant also submitted declarations from eleven General Managers [Doc. 50–19] and twenty District Managers [Doc. 50–19; Doc. 50–20; Doc. 50–21] explaining in part: Defendant has a policy to pay overtime and minimum wage; how labor costs are managed; and legitimate reasons exist for making changes to employees' records, such as an employee "switching positions mid-shift and forgetting to clock in under the applicable pay rate code" [*e.g.*, *id.* at 6, 10–11, 29–30, 48]. Lastly, Defendant filed declarations from fifty hourly-paid associates [Doc. 50–22] who all claim they have been properly compensated, including the receipt of overtime and minimum wage differentials when owed [*e.g.*, *id.* at 3, 5, 7–9, 25, 33, 71].

### F. Opt–Ins

In addition to the two named Plaintiffs, twenty-one individuals filed consent forms to be included as plaintiffs [Doc. 3; Doc. 5; Doc. 6; Doc. 8; Doc. 14; Doc. 15; Doc. 18; Doc. 20; Doc. 21; Doc. 28; Doc. 31; Doc. 35; Doc. 36; Doc. 40; Doc. 47]. Twelve of these Plaintiffs filed declarations, including named Plaintiffs Beecher and Cain [Doc. 41–6; Doc. 41–7; Doc. 41–8; Doc. 41–9; Doc. 41–10; Doc. 41–11; Doc. 41–12; Doc. 41–13; Doc. 41–14; Doc. 41–15; Doc. 42–1; Doc. 48–1].

### III. FLSA Generally

Congress enacted the FLSA to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). Section 207 provides that:

[N]o employer shall employ any of his employees who in any workweek is en-

gaged in commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*Id.* § 207(a)(1). Section 206(a) further requires employers to pay their employees minimum wage. *Id.* § 206(a).

## IV. *Legal Standard for Conditional Certification*

■■■ The FLSA permits collective action "against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action suit under Federal Rule of Civil Procedure 23, where an unwilling plaintiff must "opt out" of the class, a class action pursuant to Section 216(b) of the FLSA requires employees or former employees to "opt in" to the class, by filing a written consent to join the action. *Cameron–Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 (11th Cir.2003). District courts may, in their discretion, facilitate notice to potential plaintiffs to an FLSA collective action to implement this "opt in" procedure. *See Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 168–69, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

The United States Court of Appeals for the Eleventh Circuit has endorsed a two-tiered approach to certification of a collective action under the FLSA. *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218–19 (11th Cir.2001).[6] The two-tiered approach defines two phases of certification: the earlier, "notice" phase, after which a class is conditionally certified, and a later phase prompted by the filing of a motion for decertification, at which point the case is either certified as a collective action or decertified. *Id.* at 1218. The instant motion asks the Court for conditional class certification, which is the first tier of the *Hipp* approach.

■■■ At the notice phase, the district court should determine: 1) whether there are other employees who wish to opt-in to the action; and 2) whether those employees are "similarly situated" with respect to their job requirements and pay provisions. *Dybach v. Fla. Dep't of Corr.,* 942 F.2d 1562, 1567–68 (11th Cir.1991). Plaintiffs bear the burden of establishing that they are similarly situated with the group of employees they wish to represent. *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096–97 (11th Cir.1996). This burden, however, is not heavy. Plaintiffs are not required to show that they hold identical positions; rather, they must show only that their positions are similar to those positions held by putative class members. *Hipp,* 252 F.3d at 1217; *Grayson,* 79 F.3d at 1096. *But see Davis v. Charoen Pokphand (USA), Inc.,* 303 F.Supp.2d 1272, 1276 (M.D.Ala.2004) ("The rationale for the 'fairly lenient standard' is that at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence. This rationale disappears, however, once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures" (internal citation omitted) (citing *White v. Osmose, Inc.,* 204 F.Supp.2d 1309, 1313 n. 2 (M.D.Ala.2002))). Although the similarly situated standard is not a stringent one, a showing of similarity requires

---

**6.** Although *Hipp* involved collective actions brought under the Age Discrimination in Employment Act of 1967, the Eleventh Circuit has made clear that the two-tiered analysis in *Hipp* as to conditional certification applies with equal force to FLSA collective actions. *Cameron–Grant,* 347 F.3d at 1243 n. 2.

more than unsupported and generalized allegations. *See Hipp*, 252 F.3d at 1219 (citing *Grayson*, 79 F.3d at 1097); *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir.1983). Plaintiffs may make this showing by "making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson*, 79 F.3d at 1097 (internal quotation marks and citation omitted).

■ The Eleventh Circuit has stated that " 'a unified policy, plan, or scheme of discrimination may not be required to satisfy' " the similarly-situated requirement of Section 216(b). *Hipp*, 252 F.3d at 1219 (quoting *Grayson*, 79 F.3d at 1095). Nevertheless, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Williams v. Accredited Home Lenders, Inc.*, No. 1:05–CV–1681–TWT, 2006 WL 2085312, at *3 (N.D.Ga. Jul. 25, 2006) (Thrash, J.) (internal quotation marks and citations omitted).

V. *Denial of Plaintiffs' Request for Conditional Certification*

■ The Court finds this is an inappropriate case for a nationwide collective action involving all of Defendant's hourly paid employees. In order for the Court to grant conditional collective-action, Plaintiffs must show other employees wish to opt in to the suit *and* those employees are similarly situated. *Dybach*, 942 F.2d at 1567–68. This means that class members must be similarly situated to Plaintiffs and to each other. The Court finds that Plaintiffs have not made a sufficient showing.

Specifically, the Court finds, after evaluating all of the exhibits and declarations submitted,[7] that Plaintiffs have not shown a reasonable basis for believing potential class members are similarly situated to each other or the named Plaintiffs.

Even assuming, arguendo, that there exists a nationwide practice of reviewing and sometimes revising hours clocked in and out, and tips received, that is not enough glue to hold this proposed class together; neither is the fact that Defendant generally discourages managers from allowing overtime work. Defendant has not only explained why it does this [*e.g.*, Doc. 50–3 ¶ 17 ("There are a number of legitimate reasons why local management would need to correct associate records such as failing to clock in or clock out, or clocking in under the wrong job code, or where an associate inverts numbers in the tip amounts she received."); Doc. 50 at 12 ("Like every employer in the US, SnS actively manages its labor costs, including its overtime payments to employees.") ],

---

**7.** Defendant contends there are numerous problems with Plaintiffs' declarations and exhibits including: conclusory allegations; lack of foundation; general, vague allegations; "cookie-cutter declarations"; lack of personal knowledge; incorrect statements; hearsay; and lack of authentication [Doc. 51]. In addition Defendant has moved that one of Plaintiffs' declarations be struck as untimely [*Id.*]. While the Court believes that some of Defendant's concerns have merit, it will nonetheless consider these documents in making the initial decision whether to conditionally certify the class. *See Jewell v. Aaron's, Inc.*, No. 1:12–CV–0563–AT, 2012 WL 2477039, at *5 n. 6 (N.D.Ga. June 28, 2012) (Totenberg, J.) ("[T]he Court finds that it may properly consider hearsay, if necessary, in deciding whether to issue class notice."); *McCray v. Cellco P'ship*, No. 1:10–CV–2821–SCJ, 2011 WL 2893061, at *3 (N.D.Ga. Apr. 8, 2011) (Jones, J.) ("After considering the procedural posture of this case (i.e., conditional certification and the "fairly lenient" standard . . .), the Court will allow a relaxed evidentiary standard at this point of the litigation."). The Court will likewise consider the numerous declarations, including attachments, filed by Defendant.

but Defendant has also come forward with the individual time records (showing both uncorrected and corrected time and tip entries) for Plaintiffs, including Beecher, P. Cain, C. Cain, Barnes, Hawkins, and Fontana [Docs. 50–7 through 50–16 and 50–18]. Via these time records and related declarations, Defendant has undercut some of Plaintiffs' broad assertions that all hourly-paid employees were not properly compensated [*compare* Doc. 50–5 ¶ 23 ("Both Cory Cain's and Brittany Barnes' earning records show that they both received a minimum wage differential payment"), *with* Doc. 41–8 ¶ 8 (Cain declaring "[t]hroughout my employment, including the last three years, during those weeks when my cash wages plus tips totaled less than the minimum wage for all hours worked, Steak N Shake did not pay me the minimum-wage shortfall"]. Accordingly, Plaintiffs have failed to show Defendant has a nationwide practice of "purposely and in bad faith" altering records for the purpose of depriving hourly employees of proper compensation.

While Defendant's stores have a typical structure, the same positions, the same associates' handbook, the same internal reports, and the same method for clocking in, clocking out, and reporting tips, this is also not enough to show Plaintiffs and potential class members are similarly situated. Specifically, Plaintiffs' claims are too individualized to show a pattern, practice, policy, or commonality. Because individual store managers typically make the changes to the payroll records [Doc. 50–17 ¶ 5], a class action would result in calling numerous supervisors from individual stores to attest to each and every change to an individual Plaintiffs' payroll record. Hence, just proving that all Plaintiffs and potential class members used the same reporting system and that the stores used the same internal reports, does not resolve Plaintiffs' claims or show Defendant treated Plaintiffs similarly—especially since legitimate reasons exist for making changes [Doc. 50 at 11].

Lastly, based on the large size of the class and the individualized nature of the claims, this single case could result in "correction-by-correction mini-trials of more than 2 million corrections made to time and tip records of the putative class" [*Id.* at 3, 12, 27]. Because of the class size and lack of cohesion among the claims, this class and resulting litigation could easily become unmanageable. Therefore, because of the failure to identify a nationwide policy or commonality among the proposed class members, the Court concludes Plaintiffs have failed to show Plaintiffs and potential class members are similarly situated.

Given the fact that Plaintiffs have failed to show an existing nationwide policy or practice, the Court finds that twenty-three plaintiffs, named and opt-in, is insufficient to show there is interest from others in joining this suit. Since Plaintiffs originally filed this suit on November 28, 2011, twenty-one other individuals have filed consent forms to opt in to this action [*see* Notices of Consent Filings: Doc. 3; Doc. 5; Doc. 6; Doc. 8; Doc. 14; Doc. 15; Doc. 16; Doc. 20; Doc. 21; Doc. 28; Doc. 31; Doc. 35; Doc. 36; Doc. 40; Doc. 47]. Plaintiffs, named and opt-in, represent only eleven of Defendant's 400 restaurants [Doc. 67 at 12]. Plaintiffs worked almost exclusively within a single market in Atlanta, Georgia, at four stores within a thirty-two-mile radius [Doc. 50 at 1]. While Plaintiffs worked in a total of four states, three of these states, Texas, Florida, and Illinois, are each only represented by one Plaintiff [Doc. 67 at 11].

The Court finds that twenty-three Plaintiffs, twenty of whom worked in one state and almost exclusively in four stores, is

insufficient to conditionally certify a nationwide class of 65,000 employees. While courts in other cases have conditionally certified classes with a similar number of plaintiffs representing the potential class at this stage, the Court finds such cases easily distinguishable. For example, in *Bennett v. Advanced Cable Contractors, Inc.*, the Court held that fifteen plaintiffs, named and opt-in, demonstrated sufficient interest. No. 1:12–CV–115–RWS, 2012 WL 1600443, at *14–15 (N.D.Ga. May 7, 2012) (Story, J.). However, in *Bennett*, the putative class was limited to defendant's "Cable Technician[s], in the State of Georgia," and thus was not a nationwide class of all hourly employees, like Plaintiffs seek in this case. *Id.* Likewise, in *Jewell v. Aaron's, Inc.*, the Court found sufficient interest to conditionally certify a nationwide class based on over twenty employees wishing to opt-in; but even the original twenty opt-in plaintiffs "worked in twenty-three cities and eleven states covering the Northeast, the Midwest, the Southeast, and the Southwest." No. 1:12–CV–0563–AT, 2012 WL 2477039, at *1 (N.D.Ga. June 28, 2012) (Totenberg, J.). Moreover, while the Court in *Riddle* conditionally certified a class based on three opt-ins, that putative class was limited to the Southeastern United States, and was not a nationwide class. *Riddle v. Suntrust Bank*, No. 1:08–CV–1411–RWS, 2009 WL 3148768, at *3 n. 5 (N.D.Ga. Sept. 29, 2009) (Story, J.). Thus, taking into consideration the large size of the putative class Plaintiffs seek to conditionally certify, the Court finds that Plaintiffs have made an insufficient showing of willingness from others to join the suit. Thus, because Plaintiffs have failed to prove the *Dybach* factors for conditional class certification, the Court denies Plaintiffs' Renewed Motion for Conditional Collective–Action Certification and Class Notice [Doc. 41].[8]

## VI. *Conclusion*

Plaintiffs' Motion for Conditional Collective–Action Certification and Class Notice [Doc. 23] is DISMISSED AS MOOT. Plaintiffs' Renewed Motion for Conditional Collective–Action Certification and Class Notice [Doc. 41] is DENIED. Defendant's Notice of Objections to, and Motion to Strike, Evidentiary Exhibits Submitted in Support of Plaintiffs' Motion for Conditional Collective–Action Certification and For Court–Approved Notice to the Collective Action Class [Doc. 51] is DENIED. Defendant's Motion to Stay Discovery [Doc. 55] is DENIED, and the parties are ORDERED to confer and submit a new discovery schedule for Court approval. Plaintiffs' Motion for Leave to Exceed Page Limit as to Plaintiffs' Reply in Support of their Motion for Conditional Certification and Court–Supervised Notice to Opt-in Plaintiffs [Doc. 70] is GRANTED.

---

8. Plaintiffs previously filed a proposed Notice of Lawsuit with Opportunity to Join [Doc. 41–3] and proposed Consent to be Party Plaintiff [Doc. 41–4], which Defendant objected to [Doc. 50–2]. Since Plaintiffs' Motion for Conditional Collective–Action is denied, the contents of the proposed notice, and Defendant's objection thereto, are moot. Similarly, on June 5, 2012, Defendant filed a motion [Doc. 55], asking the Court to stay all discovery until the Court rules on Plaintiffs' Motion for Conditional Collective–Action Certification [*Id.* at 1]. Because the Court has denied Plaintiffs' motion, there is no longer a need to stay discovery, and thus Defendant's motion [Doc. 55] is denied. However, the parties are ordered to confer and submit a new discovery schedule for Court approval.